COWLES and others *against* WHITMAN and another:

*Hartford,*
June, 1834.

Cowles
*v.*
Whitman.

## IN ERROR.

It is a general rule, that a bill in chancery will not lie for the specific performance of an agreement relating to personal chattels, the breach of which may be compensated by damages.

But where it was mutually agreed between *A* and *B*, that *A* should subscribe, in the name of *B,* for five shares of the capital stock of a new bank about to be distributed, and that all the shares allowed on such subscription beyond what *B* could pay for, should be paid for by and belong to *A ;* accordingly, *A* subscribed for five shares, in *B's* name, which were allowed, the first instalment being paid by *A* from his own funds ; *B* then declared her inability to pay for any of such shares, and *A* paid the subsequent instalments ; on a bill in chancery brought by *A* against the administrator of *B* for a transfer of these shares, it was held, 1. that by this transaction, a trust was created, which it was the peculiar province of a court of chancery to enforce ; 2. that it was no defence to such bill, that there were just claims in favour of *B's* estate, in a course of settlement in the court of probate, against *A*, a responsible man, as the adjustment of such claims belongs exclusively (except by appeal) to the court of probate ; 3. that it was no defence to such bill, that a decree for the plaintiff would take such shares out of the hands of the administrator and out of the jurisdiction of the court of probate, as they were always in equity the property of *A*, and ought not to be held for the payment of *B's* debts, or for distribution among her heirs ; 4. that a court of probate was competent to grant the relief sought by the bill ; and consequently, that the bill was sustainable.

The allowance or disallowance of costs on a suit in chancery, is entirely discretionary, and not the subject of error.

The testimony of a party to a suit, offered by the opposite party, and given voluntarily, against the interest of the witness, is admissible.

THIS was a bill in chancery, brought by *Solomon* and *Edward Whitman,* to obtain from *Lemuel Whitman,* administrator of *Lemira Whitman,* deceased, a transfer of five shares of the capital stock of the *Middlesex County Bank,* standing in her name, on the books of that institution.

Soon after the incorporation of the *Middlesex County Bank* and before the distribution of the stock, by the commissioners, it was agreed between the plaintiffs and their sister, *Lemira Whitman,* then living, that five shares of such stock should be subscribed in her name, and that if more shares should be distributed to her than she could pay for, all the shares beyond what she could pay for, should be taken and paid for by, and belong to, the plaintiffs. In pursuance of this

agreement, five shares of such stock were subscribed for, in her name, all of which were distributed to her, by the commissioners. At the time of subscription, the plaintiffs paid from their own funds the sum of ten dollars on each of said shares. Shortly afterwards, *Lemira Whitman* declared her inability to pay for any part of them, and insisted upon the plaintiffs taking them and paying for them, according to said agreement; to which the plaintiffs assented. Within a fortnight afterwards, she died, intestate, leaving the parties to this suit her only heirs. The subsequent instalments, as they accrued from time to time, were paid by the plaintiffs, amounting together to the sum of 70 dollars on each share.

*Lemira Whitman* dwelt in the house with the plaintiffs, her brothers, from 1822 to her death. During this period, she laboured for the family and for herself. She owned 933 dollars worth of real estate, including one fifth of the dwelling-house, in which she resided, and 143 dollars, distributed to her, in 1822, of her father's estate. The plaintiffs were her agents for the management of her property, but never accounted with her, nor with her administrator, after her death.

The court declined an inquiry into the condition of the accounts between the plaintiffs and said *Lemira,* or her administrator, there being no suggestion in the bill or proof on the hearing, that the plaintiffs are not responsible men.

The only defendants who appeared, were *Seth Cowles* and wife, and *Lemuel Whitman,* the administrator.

On the hearing of the cause on the bill and answer, the agreement between the plaintiffs and said *Lemira,* was proved, by the testimony of *Nancy Whitman,* one of the defendants, who was offered as a witness, by the plaintiffs, was objected to by the defendants, and was admitted by the court, she being willing to testify.

The court decreed a transfer of the stock to the plaintiffs, with costs against the defendants. On a motion in error by the defendants, the case was brought before this court for revision.

*Toucey,* for the plaintiffs in error, contended, 1. That a bill for the specific performance of an agreement relating to personal chattels merely, will not lie. This is unquestionably the general rule; and stock is, least of all things, an exception to

Hartford,
June, 1834.

Cowles
*v.*
Whitman.

it.    There is adequate remedy at law.    *Cud* v. *Rutter*, 1 *P. Wms.* 570.    *Nutbrown* v. *Thornton*, 10 *Ves.* 161.    *Mason* v. *Armitage*, 13 *Ves.* 37.    *Dorison* v. *Westbrook*, 5 *Vin. Abr.* 510.    1 *Madd. Chan.* 402.    2 *Swift's Dig.* 17.    *Newl. Contr.* 89.

2. That the plaintiffs stand indebted to the estate, in a greater sum than the value of the stock; and a court of chancery will not take it out of the hands of the administrator until the debt is paid.    The plaintiffs must first do equity.    1 *Mad. Chan.* 525. 2 *Swift's Dig.* 187.

3. That the decree takes the personal estate of the deceased out of the hands of the administrator and out of the jurisdiction of the court of probate.    *Pitkin* v. *Pitkin* & al. 7 *Conn. Rep.* 307.    *Bailey* & al. v. *Strong* & al. 8 *Conn. Rep.* 278. *Beach* v. *Norton* & al. 9 *Conn. Rep.* 182. 196.

4. That *Nancy Whitman* was an incompetent witness in the cause.    [Not much insisted on.]

**5.** That the court ought not to have subjected the administrator to the payment of costs.

*Hungerford* and *J. Griswold*, for the defendants in error, contended, 1. That this was not an ordinary agreement to transfer stock, but the stock in question belonged originally to the plaintiffs, they having paid all the instalments, as they accrued; and *Lemira Whitman*, during her life, and her administrator afterwards, held it *in trust* for them.    It is within the appropriate province of a court of chancery to enforce the execution of a trust.    *Jackson* d. *Kane* & al. v. *Sternbergh*, 1 *Johns. Ca.* 153.    *Foote* & al. v. *Colvin* & al. 3 *Johns. Rep.* 216. 221. *Jackson* d. *Benson* v. *Matsdorf* & al. 11 *Johns. Rep.* 91. *Jackson* d. *Seelye* v. *Morse*, 16 *Johns. Rep.* 197.    *Boyd* v. *McLean* & ux. 1 *Johns. Ch. Rep.* 582.    *Botsford* v. *Burr*, 2 *Johns. Ch. Rep.* 405.    *Wray* v. *Steele*, 2 *Ves. & Bea.* 388.    1 *Swift's Dig.* 285.    2 *Swift's Dig.* 112.    *Rider* v. *Kidder*, 10 *Ves.* 367.    *Mechanics Bank* v. *Seaton*, 1 *Pet.* 305.

2. That the court of probate had no jurisdiction.

3. That the testimony of *Nancy Whitman* was properly admitted; she being called to testify against her interest, and consenting so to testify.    *Norden* v. *Williamson* & al. 1 *Taun.* 378.    *Steele* v. *Phœnix Insurance Company*, 3

*Binn.* 306.   *Van Reimsdyk* v. *Kane* & al. 1 *Gal.* 630.
*Worral* v. *Jones* & al. 7 *Bing.* 395. (20 *Serg. & Lowb.*
177.)

4. That the allowance of costs, in chancery, is no ground
of error.

DAGGETT, Ch. J.   Among the errors assigned are two,
which have been very properly abandoned by the counsel for
the defendants below.   First, that costs were taxed against
them.   Surely, such a question cannot be made in this Court ;
as it is entirely discretionary, according to the course of the
court, to allow or disallow costs.

Another ground of error alleged, is, that the court admitted
the testimony of *Nancy Whitman,* one of the defendants.
This testimony, it appears, was given voluntarily on her part,
and *against her interest.*

This objection, like the other, is quite unfounded ; and as it
has not been pressed, no further remark is necessary.   *Norden*
v. *Williamson* & al. 1 *Taun.* 378.

But it is contended, that a bill will not lie for the specific exe-
cution of a contract relating to personal chattels merely, be-
cause there is adequate remedy at law ; and for this position
several cases are cited, and many more might be cited.   As a
general rule, it is true.   As contracts for the delivery of corn,
flour, stock in banks or in the funds, and the like, may be com-
pensated by damages, courts of equity will leave the parties to
their remedy at law.   *Buxton* v. *Lister* & al. 3 *Atk.* 383.   2
*Swift's Dig.* 17.   There can be no difference between these
five shares of bank stock and any other like number.

The facts, however, on which the decree rests, present no
such point.   They are in substance as follows : That it was
mutually understood and agreed between the plaintiffs and
*Lemira,* that five shares of the capital stock in the bank
should be subscribed for, by them, in her name, and that if
more stock should be distributed to her than she could pay for,
all the shares beyond what she could pay for should be taken
and paid for, by the plaintiffs, and should belong to them.
Five shares were subscribed for by them, in her name, and
their funds advanced therefor.   After these shares were thus
taken, she declared her inability to pay for them, or any part

thereof; and insisted, that they should take them and pay for them; to which they assented.

I discern here no sale of this stock, nor any contract or agreement to transfer it. None of the cases cited, therefore, apply. On the contrary, I perceive a *trust* created, within the principles always applicable to this subject. Money is here paid, by these plaintiffs, for stock; and this stock, by her direction, stands in her name. They are the owners in equity; she is the owner at law. They now seek an execution of this trust; and this, by all the rules relating to trusts, comes within the peculiar province of a court of equity. Fraud, accident and trust are said to be the *peculium* of a court of chancery.

It is, however, again insisted, that it appears from the record, that the plaintiffs are and were indebted to the estate of *Lemira* in a greater sum than the value of the stock; and, therefore, it would be inequitable to take this stock out of the hands of the administrator, until this debt shall have been paid. This objection is founded upon a misconception of the facts found by the court. The court does not find any indebtedness at all. On the contrary, it says, " It doth not appertain to this court to inquire into the condition of the accounts between the plaintiffs and *Lemira,* or her administrator; there being no suggestion or proof that the plaintiffs are not responsible men." This objection admits, that there are claims of *Lemira's* administrator against the plaintiffs. What then? To the court of probate, where that estate is now in settlement, belongs the adjustment of all such claims; and only by appeal therefrom is the superior court authorized to hold jurisdiction over them, as will be further shown in the consideration of the remaining error assigned. Besides, the decree proceeds on the ground, that this bank stock never did belong in equity to *Lemira,* but at all times to the plaintiffs.

Again, it is alleged, as a ground of error, that this decree takes these bank shares out of the hands of the administrator, and out of the jurisdiction of the court of probate. Be it so. If the shares were never her property, but always belonged in equity to the plaintiffs, as is supposed above, the court of probate ought not to hold them for the payment of debts or for distribution among the heirs. What if a deed of a farm of land had been taken in her name, and paid for, by the plaintiffs; could it have been successfully contended, that the heirs

and administrator could not have been compelled to execute a conveyance, because the property would thereby be taken from the heirs and creditors? or because it was inventoried in the court of probate?

Cases are cited from 7 *Conn. Rep.* 307. 8 *Conn. Rep.* 278. and 9 *Conn. Rep.* 196. to prove, that the settlement of cases before the court of probate cannot be drawn, by bill in equity, into the superior court. I fully recognize the principles of those decisions, but do not perceive their bearing on this decree, except strongly to support it. They do sustain the decree against the objection that the claims of *Lemira's* administrator on these plaintiffs, could be taken into consideration, by the superior court; because they are cognizable by the court of probate, and must there be decided. This, as will be found, is the point in all those decisions.

But it is urged, that the question made in the superior court respecting the right to a transfer of these shares, should have been made before the court of probate. On what ground can this be urged? Can a court of probate order a transfer of property, by the heir or administrator? Could it order a transfer of these shares? If so, how could it enforce the order? No such power is possessed by a court of probate; nor is it believed, that it has ever been exercised. In the case of *Beach* v. *Norton* & al. 9 *Conn. Rep.* 196. one of the cases cited by the plaintiffs in error, it is said, by the Judge who delivered the opinion of the court : " I do not mean to lay down the position, that the aid of a court of chancery can never be properly sought in relation to an estate in settlement before the court of probate. Such aid may be wanted, perhaps, in certain cases ; and a judgment of a court of probate may thereby be affected."

Upon the whole, I consider this case free from difficulty. The decree must, therefore, be affirmed.

The other Judges were of the same opinion.

Decree affirmed.