### James B. Colt *vs.* Elizabeth H. Colt and others, Executors.

A testator by his will as originally executed, gave to his brother five hundred shares of certain stock, giving also other shares of the same stock to sundry other legatees; and by a residuary clause of the will he gave all the remaining stock of that kind of which he should die possessed, *to the several persons to whom he had before given legacies of the stock, to be divided among them in the proportions in which the legacies of the stock had been given.* By a codicil the testator, "for reasons growing out of his late unbrotherly conduct," revoked the legacy of five hundred shares to his brother and gave the shares to another legatee. Held, that the legacy of the share of the residue of the stock was not revoked.

The legacy of the share of the residue was regarded as not a dependent or auxiliary legacy, but as an independent one, and consequently as not affected by the revocation of the first legacy.

A second legacy will never be presumed to be a dependent legacy. To make it dependent a clear intention to that effect must appear on the face of the will.

Colt v. Colt.

Where a bequest has been once made, it will not be considered revoked unless no other construction can fairly be put upon the language.

While it is a rule that a will and codicil are to be read as of the date of the codicil, yet where legacies have been revoked by the codicil it does not follow that the will is to be read as if they had never been in it. The revoked clauses may be read for the purpose of understanding better the meaning of the clauses which remain.

A legatee may bring an action of assumpsit for a legacy which has become due.

And a bill in equity will lie in such a case, where there is ground for equitable jurisdiction in connection with the claim, as where a discovery is sought, or an account, or where the relief sought is of such a specific character that the remedy at law is inadequate.

And it does not affect the case that the estate is in settlement in the court of probate and is represented insolvent, where it is in fact solvent and the legacy has become payable, nor that an action could have been brought on the probate bond for the non-payment of the legacy.

BILL in equity, brought by the petitioner as a legatee under the will of Samuel Colt, against the respondents, executors of the will, to compel them to transfer to him certain shares of the stock of the Colt's Patent Fire Arms Manufacturing Company, with sundry dividends on the stock alleged to have been received by them, and for a disclosure and an account. Sundry other parties interested were cited in. The principal facts alleged in the bill were the following :—

Samuel Colt died on the 10th day of January, 1862, owning at the time of his death nine thousand nine hundred and ninety-six shares of the capital stock of The Colt's Patent Fire Arms Manufacturing Company. On the 6th of June, 1856, at which time he owned a much smaller amount of the stock, he made a will by which he distributed the stock he then owned among different legatees, by distinct legacies, giving to the petitioner and his issue five hundred shares of the stock by the following bequest :—

" To my brother James B. Colt, now of said city of Hartford, I give and bequeath the use and improvement during his life of five hundred shares of the stock of said Colt's Patent Fire-arms Manufacturing Company, and after the death of my said brother to his issue lawfully begotten as an absolute estate. This bequest is on condition that the said James B. Colt shall waive and relinquish all claims and

demands actual or pretended which he may have against me or against said Colt's Patent Fire Arms Manufacturing Company. I also give and bequeath to my executors and their successors in said office five hundred shares of the stock of said Colt's Patent Fire Arms Manufacturing Company, in trust for the issue of said James B. Colt lawfully begotten, the profits and dividends thereof to be applied to the education of his said issue, so far as the same may be necessary for that purpose, until the youngest surviving of said issue shall have reached the age of twenty-one years, when said stock, and all accumulations thereof, if any, shall go to said issue in equal proportions as an absolute estate."

The testator, after making sundry pecuniary and specific bequests and devises, disposed of the remainder of his property by the following residuary clause :—

"All the rest and residue of my estate, of every kind and description, not herein disposed of, I give, bequeath and devise as follows: All the remaining stock of said Colt's Patent Fire Arms Manufacturing Company of which I shall die possessed shall be divided amongst the several persons and parties to whom I have hereinbefore given legacies of stock, in the ratio and proportion in which said legacies of stock are hereinbefore given. All my other residuary estate shall be divided amongst the several persons to whom I have hereinbefore given pecuniary legacies in gross, in the ratio and proportion in which I have hereinbefore given such pecuniary legacies, meaning that my residuary estate in said stock shall be shared by the same persons to whom I have given specified legacies in stock and in precisely the same ratable proportions, and that my other residuary estate shall be shared by the same persons to whom I have given gross pecuniary legacies and in precisely the same ratable proportions."

On the 12th of January, 1858, the testator executed a codicil to his will, in which he revoked sundry legacies of stock in the Arms Company given by the will, and by the following clause revoked the legacy of five hundred shares given to the petitioner :—

"I also revoke and cancel, for reasons growing out of his late unbrotherly conduct towards me, the legacy of five

Colt *v.* Colt.

hundred shares of the stock of Colt's Patent Fire Arms Manufacturing Company, given in the aforesaid will to James B. Colt for life, remainder to his children ; and in lieu thereof I give and bequeath said five hundred shares of stock to the trustees named in said will for founding a school for practical mechanics and engineers, subject to the uses and trusts created in said will for that purpose."

On the 2d of February, 1859, the testator made a second codicil, by which he revoked the legacies given by the original will and first codicil to trustees for founding a school for mechanics and engineers, and by the following clause revoked all legacies before given to the children of the testator :—" I hereby give and bequeath to each of the children of James B. Colt a legacy of one hundred dollars, and I hereby cancel and wholly revoke any and all other legacies or devises by me heretofore at any time made to or for the use and benefit of said children or any of them."

The petition set out the foregoing will and codicils, and after alleging that they were duly proved and approved in the court of probate of the district of Hartford, on the 5th of February, 1862, that the persons named as executors accepted the trust and gave bonds according to law, and that the court allowed two years from the proof of the will within which to settle the estate, proceeded as follows :—

That said executors thereupon represented said estate to the court of probate as an insolvent estate, and said court thereupon appointed commissioners to hear and examine the claims that should be presented against it, and limited and appointed six months from the 27th day of February, 1862, for the exhibition of claims against said estate, of all which due and legal notice was given by advertising and posting. And thereupon, from time to time, divers claims were presented to said commissioners against said estate, amounting in the whole to less than $200,000, which claims from time to time, without any action of said commissioners thereon, were all adjusted and paid by said executors, with the exception of sundry claims, the nominal amount of which is in the whole less than $75,000, but upon which there is in fact, and

as said executors claim, a much less amount due, and said commissioners have never had a meeting to act upon said claims or any of them, and have in fact never acted upon them, and have never been requested by said executors so to do, and have never made, and have never been requested by said executors nor by said court of probate to make, any report to said court of probate of claims allowed and disallowed by them, nor any other report whatever. That the inventory of said estate duly made and returned to said court of probate amounted to the sum of $3,257,644, being property within the state of Connecticut, but that the property so inventoried was in fact worth a much larger sum, that in addition there were assets belonging to said estate situate out of the state of Connecticut and not embraced in said inventory, amounting, as the petitioner is informed and believes and therefore avers, to the sum of $300,000, which has since come into the hands or under the control of said executors, and said inventoried property has greatly increased in value since said inventory was made. That said estate in fact is not and never was insolvent, but at the time of the decease of the testator and ever since has been and still is worth several millions of dollars above all debts due from said estate and all claims against it and all expense of settling the same.

That the term originally allowed by said court of probate for the settlement of said estate was unnecessarily and unreasonably long, that said estate could easily have been settled within much less time, to wit, within one year from the probate of said will ; but that said executors conducted so negligently in that behalf that they did not nor would settle the same, nor take the necessary and proper steps to cause the same to be done within that time, although during the whole time said executors had and still have cash and cash funds in their hands to a much greater amount than all the debts due from the estate, and all expenses and charges of settling the same, and all other expenses of every sort for which the said estate or the executors on behalf thereof are liable, so that none of said stock, or dividends thereon, or real estate or other property in said will specifically devised or bequeathed,

would be needed to pay any portion of said debts, charges and expenses, and all said stock and the dividends thereon can now, and for a long time past could have been, divided, transferred and paid over to the legatees entitled thereto, without any loss, inconvenience or damage to said estate or to any of the respondents.

That the said Colt's Patent Fire Arms Manufacturing Company is a corporation established by authority of the state of Connecticut and doing business at said Hartford, and for a long time past, both before and since the decease of said testator, has been and now is employed in the manufacture of fire arms at an immense profit; and that at the time of the decease of the testator the capital stock of said corporation consisted of 10,000 shares of $100 each, of which the testator was then the owner and possessor of 9,996 shares as aforesaid. That since the decease of said testator the business of said corporation has been continued to a greater extent than before, and to a greater profit, the same having been in fact conducted under the direction of said executors, they having the control of nearly the whole of said stock, as the same at the time of the decease of the said testator stood in his name. That since the decease of said testator there have been sundry dividends declared by said corporation on said capital stock, the amount of which this petitioner has no means of ascertaining, but which he is informed and believes and therefore avers, amount in the aggregate to nearly or quite the par value thereof; that all such dividends, so fast as they accrued or were declared on that portion of said stock in which the petitioner is interested, have been received by or came under the control of said executors, and they utterly refuse to state to him the amount of such dividends, or to account to him therefor, or to pay to him the same or any part thereof, but on the contrary they utterly deny that he has any right to or interest in any of said stock or dividends under said will; but said executors, within the two years limited for the settlement of the estate, and although the same was represented insolvent, transferred to certain other legatees of said stock under said will, the whole or some part of the

amount thereof, to which by the terms of said will they were respectively entitled, so that they could and did receive the dividends thereon ; and said executors collected and paid over to other legatees of said stock under said will the whole or part of the dividends on the number of shares to which by the terms of said will they were respectively entitled; and immediately after the probate of said will and said representation of said estate to said probate court as an insolvent estate, said executors applied for and obtained from said court an order allowing to said Elizabeth Hart Colt, widow of said deceased and the executrix of said will, the sum of $30,000 annually for the support of the family of said deceased during the settlement of said estate, which sum, as the petitioner is informed and believes and therefore avers, has ever since been and continues to be annually paid her; and the petitioner avers that from to time hereafter other dividends will be made on said capital stock. And said executors so having by their negligence improperly and unnecessarily delayed the settlement of said estate, on or about the 5th day of February, 1864, when the two years originally limited therefor were about expiring, applied to said court of probate for an extension of the time for the settlement of said estate, to which the petitioner then and there objected, and such proceedings were had on said motion that said court, against the will and objection of the petitioner, did order and decree that said executors should be allowed an additional year for the settlement of said estate ; but the petitioner avers that said order constitutes no reason why said executors should not account for and pay over to him the dividends on the stock to which he is entitled, and why they should not be required and enjoined, from time to time hereafter as dividends shall be declared, to collect, account for, and pay over the same to him, or why the prayer of this petition should not be granted. And the petitioner avers that such extension of time for the settlement of said estate was not needed by said executors for that purpose, and that said order was in fact obtained in fraud of the rights of the petitioner and greatly to his injury. And the petitioner avers that the stock in which he is inter-

ested under said will, and the dividends declared and to be declared thereon by force of said will, belong to, and should be transferred to him on the books of said company, or that they constitute a trust fund in the hands of said executors as trustees which they are bound to hold subject to the order of this court sitting as a court of equity, and from time to time to account for, and as dividends have been or shall be declared thereon, to collect, account for, and pay over the same to the petitioner ; and he avers that he is without any adequate remedy at law. And the petitioner avers that the amount of said stock to which he is entitled under said will, and the amount of dividends already accrued and declared thereon, amount respectively to a large sum, to wit, to the sum of $200,000 and over.

And the petitioner avers that the several persons made respondents to this petition, have or claim to have some interest either legal or beneficial in said residuary portion of said stock, and that it was necessary that they and each of them should be made parties to this proceeding, that their respective rights in said residuum might be so ascertained and fixed as to be binding on all said parties ; and the petitioner avers that each of said respondents had notice of all the facts herein alleged from time to time as the same occurred.

The petitioner therefore prays this court to ascertain and fix the amount of said residuum, and the parties entitled thereto, and their proportions under said will, and especially that this court would ascertain and fix the number of shares in which this petitioner has an interest under said will, and that they would require said executors to disclose under oath the number, date, and amount per share of each dividend declared by said corporation on said stock since the decease of the testator, what amount thereof if any has been collected by them, and what amount if any is uncollected ; and that this court would order and decree that said executors forthwith pay over to the petitioner the amount thereof so already collected; and that they forthwith collect and pay over to him the amount of such dividends, if any, yet uncollected by them, together with interest on both from the time the same were declared ;

also that from time to time hereafter, as dividends shall be declared on said stock, they on demand collect and pay over the same to him; or that said executors execute and deliver to the petitioner a power of attorney, irrevocable during his life, authorizing him or his attorney to collect the same free from all accounting to said executors and to vote upon said stock at all meetings of said corporation; or that they transfer to him said stock or a life interest therein on the books of said corporation; or that they give bond that they will hold the same safely during the life of the petitioner, and from time to time collect and pay over to him the dividends that may be declared thereon, and that they will give him the necessary powers of attorney to vote thereon at all meetings of said corporation; or that said executors transfer said stock to trustees to be appointed by this court to hold the same for the purposes declared in said will; and that this court would grant such other and further relief as to equity and justice may appertain.

The petition was dated June 1, 1864. The respondents demurred to it, and the case was reserved for the advice of this court.

*McFarland*, in support of the demurrer.[*]

1. The court has no jurisdiction to entertain the petition and grant the relief prayed for. The court of probate has jurisdiction over the subject-matter, and power to grant the petitioner all the relief to which he is entitled, and that jurisdiction is exclusive. In all cases where the probate court has jurisdiction the superior court has none except upon appeal. This rule is established by numerous cases. *Bryan* v. *Hinman*, 5 Day, 217; *Bacon* v. *Fairman*, 6 Conn., 129; *Pitkin* v. *Pitkin*, 7 id., 315; *Bailey* v. *Strong*, 8 id., 278; *Beach* v. *Norton*, 9 id., 182; *Cowles* v. *Whitman*, 10 id., 126; *Seymour* v. *Seymour*, 22 id., 280; *Fortune* v. *Buck*, 23 id., 1; *Bissell* v. *Bissell*, 24 id., 246; *Ashmead's Appeal from Pro-*

*bate,* 27 id., 248 ; *Dickinson* v. *Hays,* 31 id., 422. The interest which the petitioner claims is in the residuum ; he therefore avers that there is a residue, and this fact is put in issue. The first step could not be taken towards the determination of this question, without setting aside the decree of the court of probate decreeing the estate insolvent, or disregarding it. If any court has power to set aside or disregard that decree, it should be the court to which the representation was made. This court would not assume to do so, where the validity or propriety of the decree is brought in question collaterally. But supposing that this estate could be considered by the superior court solvent, how is the court to find whether there is a residue ? Only by calling upon the executors to render their account. This would be taking directly away from the probate court the jurisdiction that belongs to it and usurping it. The court is asked " to ascertain and fix the amount of said residuum, and the parties entitled thereto, and the proportions under said will," and especially that the court would do this in the case of the petitioner, and require the executors to transfer to him his interest therein. This would of course involve a settlement of the estate. The claims of creditors, though strangers to the proceedings, must be adjudicated and provided for. The rights of the respective respondents in the estate of the testator must be ascertained and enforced, for the court would not adjust the rights of one of the parties to the litigation in the subject matter, and leave the others, each in turn, to litigate the same questions, as they otherwise might do, inasmuch as each of them would have the same right to do so as the petitioner has. If this could be done the situation of the executors and the court of probate would be very singular and very embarrassing. This entire estate is in the hands of the executors, who are accountable for the same to the court of probate, and must administer the same as that court may order and decree. The court of probate could not, by law, regard the decrees of this court in the premises ; nor would the same afford any protection to the executors. The statute prescribes in plain

terms the duties of both, and must control the actions of both.

2. If the court should be of opinion that the superior court has jurisdiction to entertain the bill, then we submit that the petitioner takes nothing under the will of the testator. "A will owes its effect solely to the intention of the party with whom it originates, and therefore ceases to be valid when that intention is shown to have undergone a change. It stands on the same footing during the life of the testator as a deed of gift before delivery." 2 Am. Lead. Cases, 686. All the testamentary papers taken together make but one will, and being ambulatory until the death of the testator, are at that period to be regarded as springing from one continuous and indivisible act. 1 Jarman on Wills, 305; *Canfield* v. *Bostwick*, 21 Conn., 550; *Gold* v. *Judson*, id., 616; *Bancroft* v. *Ives*, 3 Gray, 370. This testator, in preparing his will, gives to certain persons respectively by name, including the petitioner, certain specific legacies in stock. Before the will is completed, and whilst it is inchoate and ambulatory, he changes his intention with reference to the petitioner, and cancels entirely the clause giving him a specific legacy. The mode of cancellation is of course immaterial. It is only the fact of cancellation that is material. He might have cancelled the bequest by extracting from the paper, by a chemical process, all trace of the clause containing it, or concealed or obliterated it by pasting a piece of paper over it or by running his pen through it, or by writing in the margin "this clause is revoked and is not to be considered as any part of my will," or by a similar indorsement on the back. He adopted the more regular and formal way, and obliterated this clause by a codicil. Of course it can make no difference that the dead letters remain on the paper. We are to read the will in the same way as though no trace of them remained, for there can be no difference between a physical and a legal cancellation. After the testator has thus cancelled and obliterated from his will this bequest, he is to be considered as expressing his last intention on the point in question in the language of the residuary clause:—" All the remaining stock

of said Colt's Patent Fire Arms Manufacturing Company of which I shall die possessed, shall be divided amongst the several persons and parties *to whom I have hereinbefore given* legacies of stock, in the same ratio and proportion in which said legacies and stock *are hereinbefore given.*" The testator contemplates the possibility of a residuum of stock, and in case there should be he directs that those persons and parties who should be entitled to take specific legacies in stock, shall share pro-rata in the residuum if any. This interest in the residuum is not given to such persons or parties as a specific or independent bequest, but as a complement to the legacies already given, and as incidental to them. He intends that the stock shall all be absorbed by the specific legacies. It would seem to be perfectly manifest that this petitioner has no interest in this residuum, unless he takes a specific legacy in stock. *Williams* v. *Goodtitle,* 10 Barn. & Cress., 895; *Haven* v. *Foster,* 14 Pick., 544; *Harris* v. *Davis,* 1 Collyer, 416, 427.

3. If the court should be of opinion that the petitioner takes any interest in the residuum, then we submit that he takes it subject to a condition precedent, which must be performed before he has any right to call on the executors for the stock, and that the bill is fatally defective because no performance is averred. An additional legacy, though not so expressed, will in general be held subject to the same incidents and conditions as the first legacy. 2 White & Tudor Lead. Cases in Equity, 301; *Day* v. *Croft,* 4 Beav., 561; *Warwick* v. *Hawkins,* 5 DeG. & Smale, 481. The condition is thus expressed: "This bequest is on condition that the said James B. Colt shall waive and relinquish all claims and demands, actual or pretended, which he may have against me, or against said Colt's Fire Arms Manufacturing Company." The testator says in effect that if the petitioner will release all claims and demands, actual or pretended, against him or the corporation, he shall, when he has done this, be entitled to the equivalent, (viz.,) the provision made for him in the will. The release is the consideration, so to speak, that he is to pay for the legacy given. And performance of the condition must

be averred. *Collins* v. *Gibbs*, 2 Burr., 899 ; *Lea* v. *Exelby*, Cro. Eliz., 888 ; 1 Archb. N. P., 65.

*T. C. Perkins* and *C. Chapman,* contra.

1. Does the fourth clause in the first codicil revoke the residuary clause of the will so far as the interest of the petitioner therein is concerned ? It clearly does not in terms. If it does at all it must be by construction. The rule of law as to the constructive revocations of a bequest in a will by a codicil is well settled and of very long standing. " In dealing with such cases it is an established rule not to disturb the provisions of the will further than is *absolutely necessary* for the purpose of giving effect to the codicil." 1 Jarman on Wills, 160. " One devise is not to be held revoked further than is *absolutely necessary* by a subsequent inconsistent devise." Redfield on Wills, 352. If this rule is to be literally followed it would seem to be decisive of the question, for it can not be contended with any show of reason that it is *absolutely necessary* that this revoking ·clause should affect the residuary clause in the least. But we will look still further at the decisions in similar cases, and extract the reason of the rule, the mode of applying it by courts, and the construction they give to the expression " *absolutely necessary*," and we think we shall find that it is to be applied in its *exact literal meaning,* and that courts invariably endeavor to confine the revoking powers of a codicil within the narrowest possible limits. In *Kane* v. *Astor's Exrs.,* 5 Sand. Sup. Ct. R., 467, a case of very great importance, argued at great length by the most eminent lawyers of New York, and decided by Oakley, Duer, and other eminent judges, the court say on page 534 :—" It is a sound rule that the dispositions made by a will are not to be disturbed by a codicil further than is *absolutely necessary* in order to give it effect." In the case of *Hearle* v. *Hicks,* 8 Bingham, 475, decided in the House of Lords, Tindal, C. J., uses these words : " Whether this devise was revoked must be determined, not by any express words to that effect, but by the consideration whether upon the construction of the codicil the devise and disposition therein contained must *of necessity*

be held inconsistent with the devise to the wife." In *Bradley* v. *Gibbs*, 2 Jones Eq., 13, the court say : " So far as a purpose to vary the will can be discovered that purpose is to be carried out, but the intention of the testator as declared in his will is not to be varied further than is *necessary* to carry out such purpose." Especially is this rule to be observed when by the codicil the will is in terms ratified and confirmed in other respects. *Quincy* v. *Rogers*, 9 Cush., 291. There are many cases similar to this where courts have applied this rule in just the same manner in which we ask the court to apply it here. *Lord Carrington* v. *Payne*, 5 Vesey, 404 ; *Darley* v. *Darley*, Ambler, 653 ; *Beauclerk* v. *Mead*, 2 Atkins, 167 ; *Roach* v. *Haynes*, 6 Vesey, 153 ; *Pratt* v. *Pratt*, 14 Simons, 129 ; *Francis* v. *Collier*, 4 Russell, 332 ; *Snowhill* v. *Snowhill*, 3 Zabr., 454 ; *Early* v. *Benbow*, 2 Collyer, 342 ; *Homer* v. *Shelton*, 2 Met., 202 ; *Smith* v. *Bell*, 6 Pet., 84 ; *Conover* v. *Hoffman*, 15 Abbott Pr. R., 100 ; *Graham* v. *Graham*, 19 Eng. Law & Eq., 242 ; *Murch* v. *Marchant*, 6 Mann. & Grang., 813, 825 ; 2 Roper on Legacies, Ch. 21, § 9 ; *Lord Lovat* v. *Duchess of Leeds*, 2 Drewry & Smale, 62 ; *Hinchcliffe* v. *Hinchcliffe*, id., 96 ; *Molyneux* v. *Rowe*, 8 DeGex. M. & G., 368 ; *Davis* v. *Bennett*, 30 Beav., 226. The rule as to intention is also well settled. It is that the intention to revoke must be *as clearly and fully* expressed as the intention to devise. This rule is most clearly and unequivocally laid down in *Hicks* v. *Hearle*, 8 Bing., 475, already cited, and especially in an opinion in the House of Lords, delivered by Lord Brougham, in *Stokes* v. *Heron*, 12 Clark & Fin., 186. We claim that there is nothing whatever in the will or codicils, except this revoking clause, that shows any such intention. 1st. The testator does not give the residuary share of James to any other person. If he had done so it would have been a strong argument in favor of the effect claimed by the respondents. As he did not it is a strong argument against them. He gives the 500 shares to another legatee, but not the residuary share. 2d. The testator uses very different words when he intends to deprive a legatee of all rights under the will. Speaking of James's children in the last codicil, he

says:—" I hereby cancel and wholly revoke *any and all other legacies or devises* by me heretofore at any time made to or for the use and benefit of said children or any of them." In the next paragraph he uses similar words as to another legatee : " *All legacies made in his favor are cancelled and revoked.*" If the testator intended that James should lose all legacies to him, why did he not say so in such words as he used when he intended that others should lose all given to them ? His not having done so is the strongest possible proof that he did not intend the effect to be the same. The only ground of claim on the part of the respondents is the *conjecture* that the testator was so incensed with his brother that he *intended* to deprive him of all benefit under the will. In the first place, there is nothing whatever to show that he was so incensed. It is true he says, " for reasons growing out of his late unbrotherly conduct towards me ;" but this court can not say what that conduct was, nor what effect it had on the testator's mind, nor what punishment he deemed sufficient for such conduct. This court can only judge of what the testator intended to do by the words he used to express that intention. In *Hicks* v. *Hearle*, 1 Younge & Jer., 470, Alexander, Lord Chief Baron, says :—" What passed in the mind of the testator during the latter part of his life is to us inscrutable. We can not by such *conjectures* deprive the words that he has used of their natural effect." In *Pickering* v. *Langdon*, 22 Maine, 413, the court say:—" The intention is one thing, and the execution of that intention by the testatrix another. She must execute her intentions, or by the use of some language give to the court the power to execute them, to make them effectual ;" and they cite with approval Lord Mansfield's decision in *Chapman* v. *Brown*, 3 Burr., 1634:—" A court of justice may construe a will, and from what is expressed necessarily imply an intent not particularly specified in the words, but we can not, from *arbitrary conjecture*, though founded on the *highest degree* of probability, add to the will or supply the omissions." One thing is certain, that whatever angry feelings the testator might have had towards his brother, he did not have sufficient to induce him to remove

him from the position in which he had placed him by his will at the head of the institution which he was founding. The reference in the residuary clause to those who had legacies of stock is merely *descriptio personarum.* It defines those who are to take, just as if it had called them by name, or had said " all my brothers and sisters," or " all my nephews and nieces." If the testator had left a legacy to a nephew, had then ordered the residue to be divided among his nephews, and had then revoked the first legacy, would that have effected the second? It will not be claimed that it would, but how are the two cases different?

2. The second point made is, that there should be an averment in the bill that James had no claim against the testator's estate or the corporation, or that he had released all claims that he had. We reply :—1st. This condition is only attached to the legacy of 500 shares. Neither by express words, nor by construction or inference, does it appear that such a condition is attached to the residuary legacy. The words of the will are, " The remaining stock shall be divided among the *several persons* to whom I have hereinbefore given legacies of stock, *in the ratio and proportion* in which said legacies of stock are hereinbefore given." Nothing is said about their taking under the same conditions, or in the same manner, or subject to the same limitations. The reference to the former legacy is only to fix the person and the ratio. The only ground on which it can be claimed must be under the rule that where a legacy is given *in addition* to another it is subject to the same conditions as the former one, but this is not in addition in any other sense than as a second legacy is always in addition to a first. It is not given as an addition in terms. *Boodle* v. *Partington*, 12 Eng. Law & Eq., 301. 2d. Supposing however that this condition does attach to the residuary legacy, it is not necessary to allege or prove any discharge; the acceptance of the legacy would of itself discharge and be a bar to any claim by James. The will does not require him to execute a release. The words are "waive" and "relinquish," which refer to a mental act. If the intention of the testator had been otherwise, the expression *discharge*

or *release* would have been used. 3d. But further, supposing such an allegation to be necessary, it is clearly a point which must be taken advantage of by a *special demurrer*. It is evidently an objection of *form* not of substance. It must appear in some way that there were in fact some such claims or demands existing, for if there were none, real or pretended, he could not be called upon to give any up. 4th. Even then, if it were shown that such claims existed, the difficulty could easily be reached by framing a proper decree, or by allowing an amendment. The bill should not be dismissed. It is a condition *subsequent*, and not precedent, and the relinquishment can be made at any time. *Finley* v. *King's Lessee*, 3 Pet., 346, 377. It therefore must be a matter of defense, set up and proved. Further, the condition is merely *in terrorem*, the stock not being given to any other person in case the claims are not released. *Long* v. *Dennis*, 4 Burr., 2052, 2055.

3. If then we have a right to this legacy, will the court dismiss this bill because the estate is not yet finally settled in the court of probate? 1st. It is not a question whether this is a matter which this court ought not to examine and decide, for it can not be denied that we must eventually obtain this legacy by just such a suit as this. It is merely an objection made for the purpose of delay, in the nature of a plea in abatement, and should be looked upon by the court in the same light in which pleas of abatement are, that is, to be overruled if possible. It should especially be so looked upon in this case, where it is agreed that the estate is worth five or six millions, and the only debt amounts to some $75,000, so that the representation of insolvency is agreed to be untrue, and abundance of time has passed for the full settlement of the estate, and no efforts whatever have been made to settle it. It would appear as if the estate was kept along in this way for the express object of keeping some legatees out of their rights while others received what they were entitled to. This court will not assist such an attempt unless the law is such that it is compelled to. Why is it claimed that this court has no jurisdiction whatever of any part of this bill, but must dismiss it without a hearing, or deciding even if the petitioner

is entitled to any share of the estate ?  It can not be claimed that courts of probate have sole original jurisdiction of all matters connected with the settlement of estates.  There are many cases where executors and administrators are required to come into courts of law or equity, to answer matters connected with estates ; 1 Story Eq. Jur., §§ 535, 591, 593, 601 ; as to payment of debts due from the estate ; for construction of wills ; as to payment of legacies and trust funds due from the estate.  In *Beach* v. *Norton*, 9 Conn., 196, the court say :— " We do not mean to lay down the position that the aid of a court of chancery can never be properly sought in relation to an estate in settlement before a court of probate.  Such aid may be wanted perhaps in certain cases."  In *Cowles* v. *Whitman*, 10 Conn., 121, this precise claim was made and overruled, and it was decided that in that case, as the court of probate could not enforce the delivery of certain shares of stock, a court of equity would interfere.  See *Adams* v. *Spalding*, 12 Conn., 350.  In the case now before the court, the court of probate can not enforce the delivery of the stock in question to the petitioner, and the aid of this court must be invoked for that purpose.  The only objection must be that, until the estate is settled, and the debts determined and paid, it can not be known whether this stock will not be needed to pay debts, but it is admitted that the executors have cash funds enough to pay all such claims, and that the reason the estate is not now settled is, that the executors, unnecessarily and fraudulently, procured the time to be extended.  It is not denied that there are certain acts to be performed by the court of probate which are exclusively within their original jurisdiction, such as appointment of administrators, commissioners, &c., orders of sale, and such other things as they can perform, and the cases cited by the respondents refer to this principle ; but is there any authority showing that a petition for the recovery of a specific legacy of stock, for an account of dividends and settlement of a trust, where it is agreed that the property is not wanted to pay debts, will not lie because the final settlement is not concluded ?  We have seen no such.  *Turnage* v. *Turnage*, 7 Ired. Eq., 127 ; *Pearson* v.

*Darrington*, 18 Ala., 348. All the claims overruled in the cases cited by the respondents come under the objection made by the court in *Beach* v. *Norton*, supra, that " every object sought may be obtained by proceedings before the court of probate." Here it is otherwise. 2d. These legacies are payable in one year after the death of the testator, and should be paid then unless the estate is insolvent. 2 Wms. Exrs., 1190 ; 1 Swift Dig., 454. 3d. This whole property is a trust in the hands of the executors for our benefit, and we can therefore maintain this suit here. It is well settled that courts of equity here will always take cognizance of and determine all questions relating to trusts. 4th. But even if the specific stock can not be recovered here, the executors can be made to account for the dividends received since the death of the testator and to pay them over. They certainly are not needed for the payment of debts. They are not part of the assets or estate inventoried by the executors. They are our property, received by these respondents as our trustees, and for which they should account. In any event therefore the bill should not be dismissed, but should proceed to a final hearing, and other matters can be decided when a decree is passed.

*B. R. Curtis*, of Massachusetts, in reply.

1. As to the question of jurisdiction. If the court of probate has adequate jurisdiction to examine every substantive matter set up in the bill and to afford the appropriate relief, then this court has no jurisdiction. This proposition will not be disputed. Let us then examine these substantive matters. One is, that the estate is really solvent although represented insolvent. But it can be determined whether it is solvent or insolvent only by the commissioners' report showing the amount of debts allowed against the estate ; and if the commissioners have made no report the probate court can cite them to make one. The petitioner is therefore asking this court to inquire and ascertain whether the estate is solvent when the court of probate could do it. Another matter is, that the time allowed for the settlement of the estate is unrea-

sonably long. But the statutes give discretion to the courts of probate on this subject. Another tribunal can not collaterally review this discretion. This is perfectly clear. Again, it is alleged that the judge of probate has improperly extended the time for closing the settlement of the estate. The same answer applies here, and is decisive. It is next said that the order extending the time furnishes no reason why the executors should not be required to pay over the legacies and the dividends which they have received on the stock. But this is not a specific legacy, or a legacy of fixed amount, but a legacy of a share of the residue of the estate. The action of this court would be therefore a direct interference with the settlement of the estate in the court of probate, as it is only by such a settlement that the amount of the residue can be ascertained. The petitioner then goes on to say that the stock belongs to him and that he is entitled to a transfer of it, and that until it is so transferred the executors hold it as trustees, subject to the order of this court, and he proceeds to ask that this court ascertain the residuum and the number of shares to which he is entitled. Now to do all this the superior court must take the account of the executors, to see whether, after debts and legacies are paid, there is any residue of stock. The superior court is not competent to take these accounts. The executors have given bond to account to the court of probate. This duty they can not escape. And if they be called aside into another court and compelled to account, that account would not save them from accounting to the court of probate. It is claimed that courts of equity often call executors and administrators to account. This is often done. It is the regular mode in England; but there they have no probate courts. And in some of the states this is done, where there are probate courts of a more limited jurisdiction than ours. And under the constitution of the United States a citizen out of Connecticut is not compelled to submit his rights to a probate court in Connecticut, but he may bring a bill for an account in the United States circuit court, under the rights given by the United States constitution and in derogation of the laws of Connecticut. These are the only excep-

tions. But it is said that the petitioner has a right to a transfer of this specific stock and its dividends, and that he needs the aid of equity to enable him to get them. Take the case of the dividends ; has he not complete remedy at law by a suit on the probate bond ? It is a well settled rule that equity will not take jurisdiction where there is adequate remedy at law. And as to the shares themselves, there is the same remedy by suit on the bond. The damages would be a complete compensation. Suppose however the petitioner is entitled to the specific shares. Then the question arises, when shall he come into a court of equity and seek them by a bill. There are many cases where a party will not be aided in equity until he has obtained a judgment at law. Those cases are analogous. The petitioner must obtain a probate decree, and then if the executors would not transfer the stock, a court of equity might aid him, if it were a case where damages would not be adequate compensation. [*Dutton, J.* Is it necessary that a legatee should get his title perfected by a decree of probate ?] Not that he get his title perfected, but his share ascertained. The share is a share of a residue. [*Hinman, C. J.* This would probably be so if this were a residue of the estate ; but it is only a residue of certain stock.] This is true, but this residue of stock may be needed to pay debts. [*Hinman, C. J.* It is averred that the estate is ample to pay the debts.] True, but it is not averred that some portion of this stock may not be needed to pay debts, and until this is settled it can not be known what the residue is to a share of which the petitioner is entitled.

2. As to the construction of the will. Cases cited are of little value upon questions of construction except as to general principles of construction. The facts of each case are so peculiar to itself as to make it of little value as a precedent. The slightest variations of phraseology make an entire difference. The real question in this case is, whether, on the three papers taken as one testamentary act, it appears to have been the intention of the testator that this residuary legacy of stock should go to any persons who were not prior legatees of stock. He gives it, not to each severally, but *to be divided among them.* He designates, first, a class ; second,

the fund ; and third, the proportions in which it is to be shared. Does he not therefore clearly mean that a *certain class of persons* should take this residue ? Where therefore the codicil excludes any person from this class can he take ? The codicils have revoked several legacies of shares. What became of those shares ? Did they go into the residue ? If so they increased it. If they thus affect the residue where shall the effect stop ? He clearly did not intend to die intestate as to these revoked legacies. And if he did not then the fund was increased by the codicils. Moreover the proportions were changed by revoking a part of the legacies. Our view is, that the testator intended, and has sufficiently expressed the intent, that those who were his beneficiaries under the specific legacies should have their interest increased in the same proportion by the residuary legacy. It is to be noticed that the testator does not merely cancel the legacy to his brother, but gives the same stock to another legatee. Now did he intend to leave his brother to take under the residuary bequest, and the new legatee not to take under that bequest? In substance and effect the name of James B. Colt is no longer to be read in the will. The last clause of the second codicil reads as follows :—" I hereby confirm and establish said original will as altered, changed and modified by this and the previous codicil, as my last will and testament." Suppose the original will had been destroyed, and had been re-written as altered, omitting the revoked parts, and substituting new legacies in the place of old ones revoked. Would there be any question that James B. Colt could not take under the residuary legacy ? Clearly not. He would no longer be one of the prior legatees to whom the residuary legacy was given. Yet this is the correct rule in construing the will. It is all to be read as if written at the date of the last codicil and with all the revoked legacies omitted and the substituted legacies inserted. Under this rule the will can no longer speak of James B. Colt as a legatee of five hundred shares of stock, and if it can not speak of him as such a legatee it can not as a legatee under the residuary legacy, which gives the remaining stock to the prior legatees of stock. The absurdity of the construction

claimed on the other side is shown by the fact that, under it, the five hundred shares originally given to the petitioner fall into the residuum of the stock, and the petitioner taking, as they claim, his share of this residue, takes a part of the very five hundred shares which the testator in the plainest language has declared his intention that he should not take.

3. As to the condition annexed. It is contended that this condition does not apply to the residue. The residue is given only to those who take under the specific legacies. The legacy to the petitioner was upon condition. Now can it be that the testator intended to give the residue to those who, by not complying with the condition, never became legatees? If then this condition applies to the entire bequest to the petitioner an averment of performance was necessary. It is not enough that the petitioner accept the legacy, and thus impliedly waive all claim upon the estate, for he may have enforced his claim before accepting it. It is said there should have been a special demurrer. But there are no special demurrers in equity. They exist at law by force of statute. But if it were not so, this is not a defect of form, but of substance ; a defect in the title. They say that we must prove that the petitioner has a claim to waive. But the will says, " any claim, real or pretended." How can we prove that he has a pretended claim ? But he could without difficulty discharge the claim, whether real or pretended. It is said that it is a condition subsequent. But I do not know how there could be a clearer case of a condition precedent. If then the condition attaches, the petitioner upon the present bill can not recover the legacy, as he does not aver the performance of the condition.

DUTTON, J. In June, 1856, Samuel Colt made his will, in which he bequeathed to various persons each a certain number of the shares of the stock of Colt's Patent Fire Arms Manufacturing Co., and among others to his brother James B. Colt, the petitioner, " the use and improvement during his life of five hundred shares of said stock, and after the death of my said brother to his issue lawfully begotten as an abso-

Colt *v.* Colt.

lute estate." "This bequest is on the condition that the said James B. Colt shall waive and relinquish all claims and demands, actual or pretended, which he may have against me, or against said Colt's Patent Fire Arms Manufacturing Co." In a subsequent clause of the will he inserted the following bequest: "All the rest and residue of my estate, of every kind and description, not herein disposed of, I give, bequeath and devise as follows: All the remaining stock of said Colt's Patent Fire Arms Manufacturing Co. of which I shall die possessed, shall be divided amongst the several persons and parties to whom I have hereinbefore given legacies of stock, in the ratio and proportion in which said legacies of stock are hereinbefore given. All my other residuary estate shall be divided amongst the several persons to whom I have hereinbefore given such pecuniary legacies in gross, in the ratio and proportion in which I have hereinbefore given such pecuniary legacies, meaning that my residuary estate in said stock shall be shared by the same persons to whom I have given specified legacies in stock, and in precisely the same ratable proportions; and that my other residuary estate shall be shared by the same persons to whom I have given gross pecuniary legacies, and in precisely the same ratable proportions." If this had been the whole of the will no doubt could have existed as to the title of the petitioner. There would have been a clear bequest to him of at least a life estate in five hundred shares of the stock of the Colt's Patent Fire Arms Manufacturing Co., and of at least a life estate in his ratable proportion of the residue of said stock not specifically bequeathed. But in January, 1858, Col. Colt made a codicil to his will in which occurs the following passage: "I also revoke and cancel, for reasons growing out of his late unbrotherly conduct towards me, the legacy of five hundred shares of the stock of Colt's Patent Fire Arms Manufacturing Co., given in the aforesaid will to James B. Colt for life, remainder to his children." And then he gives this stock to another legatee. There are some other clauses of the will to which allusion will hereafter be made as having a bearing upon the main question involved in the case, which is, whether the revoca-

tion in the codicil applies to and cancels the bequest to James B. Colt of his ratable proportion of the residue of the stock of the company.

The petitioner claims this share of the residue ; the respondents resist this claim.

By our law every testator has a right to dispose of his property to whatever persons and for whatever lawful objects he may think proper. The instrument by which he may do it is called his will, because it is the expression of his intention. The leading inquiry in such cases always is, what was the intention of the testator, for whenever that can be ascertained it is to govern.

To determine judicially this intention certain rules have been adopted by courts as aids in coming to a correct result.

One of these rules is, that the construction is to be put upon the instrument as a whole, and not upon detached portions of it. So, if there is a codicil, that is to be read in connection with the will, and the construction is to be put upon the whole as one instrument.

Another rule is, that the intention is to be inferred from the language used by the testator, explained, if necessary, by parol proof of such extrinsic circumstances as will throw light upon the meaning of the words used.

The court is not at liberty to indulge in conjecture as to what the testator would have done if a particular subject had been brought to his attention, or as to what he may have supposed that he had done by the language used in his will.

Another important rule, is that the different parts of a will, or of a will and codicil, shall be reconciled if possible, and where a bequest has been once made it shall not be considered revoked unless no other construction can be fairly put upon the language used by the testator.

According to these well settled rules, the bequest of a share of the residuary stock to James B. Colt has not been revoked.

The language of the revocation is plainly limited to the first five hundred shares. The words are, " the legacy of five hundred shares." It would have been difficult to have used language more definite. The bequest of the residuary shares

Colt *v.* Colt.

is in a different clause of the will, and has no reference to this clause except for the purpose of describing the legatees. If the last bequest had been in these words, " I also give to my brother James B. Colt —— shares of the residue of said stock," it would have been difficult to have raised a question as to a revocation. But a particular legatee can be specified as well by describing him as already a legatee as in any other way.

That the testator did not intend to revoke the residuary legacy may be inferred as well from what he did not say as from what he did. The specification of one item is always considered as implying the exclusion of others. If the testator had intended to cut off his brother entirely from any part of his property, it would have been much easier to have done it in express general terms, than to have made a specific revocation. He might have done, and naturally would have done, what in his second codicil he did do with reference to the children of James B. Colt. His language there is, " I hereby give and bequeath to each of the children of James B. Colt a legacy of one hundred dollars, and I hereby cancel and wholly revoke any and all other legacies or devises by me at any time heretofore made to or for the use of and benefit of said children or any of them."

It is obvious that the respondents must resort to some other rule or principle applicable to wills, or this claim of a revocation can not be sustained. This they have attempted to do.

They claim, in the first place, that it is a rule that a testator when he makes a codicil must be considered as bringing his whole will down to that time, and as speaking in his whole will as of that time. It is insisted, therefore, that this will and codicil ought to be read as of the date of the codicil, and hence after the execution of the codicil James B. Colt would not be a legatee of the five hundred shares. The bequest of the residuary shares would not apply to him. This would be a strained application of the rule, admitting it to exist. There is no doubt that for certain purposes a will of personal estate would be considered as of the date of the last codicil. The execution of such an instrument implies that the will of the

*testator* continues the same, except so far as the provisions of the will are revoked or modified. But this rule is of a limited character. If a testator should make a will giving to *A* a black horse, described as being then owned by him, and should ten years afterwards make a codicil, and in the mean time that horse should have died and another should have been obtained, it could not be claimed that the legacy would embrace the second horse. Yet if the will must be considered as speaking at the time of the codicil, it would apply to it.

But if the will should be read as of the date of the codicil it would not be of any avail to the respondents. It would not strike the clause containing the legacy of five hundred shares out of the will. The effect would be merely to insert the codicil as the last clause in the will. The bequest of the residue of the stock, with the words "to be divided amongst the several persons to whom *I have herein before given* legacies of stock," would still have the same construction which we have given to it.

The second rule on which the respondents rely is, that where one devise or bequest is made as auxiliary to a previous one, if the former is revoked the other falls with it. If a testator should devise a homestead to his son, and by a subsequent clause should devise a separate lot for the pasturage of the devisee's cows, a revocation of the devise of the homestead would revoke also *that of the pasture lot, though not named.* The rule is a correct one, but it has no application to these bequests. There is no *connection* between different shares of stock. There is no common use of them. They can be held with equal convenience separately or together. No case can be found where it has been held that a revocation of one devise operates as a revocation of another devise of merely the same kind of property. There would be no propriety in such a rule, and no reason for its adoption. It would be absurd to claim that if a testator should give a legatee two thousand dollars in one clause of his will and should also give the same legatee a thousand dollars in another clause, an express specific revocation of the former would be an implied revocation of

the latter.   The implication arises solely from the dependence of one upon the other.

The only case which gives any color to the claim of the respondents is that of *Darley* v. *Darley,* Ambler, 653.   But Lord Camden's decision in that case was reversed.   Besides there was in that case some ground for holding that the testator did not intend that one of the devises should take effect without the other.

It has been strongly urged that the will itself shows that the testator was dissatisfied with the conduct of his brother. This alone would be clearly no ground for implying a revocation.   If the construction was very doubtful it might perhaps turn the scale.   But this will is not of that character.   Besides, the dissatisfaction seems on the face of the will to be confined in its influence to the legacy of five hundred shares.   The condition of relinquishing all claims and demands is limited to that legacy.   We are not informed what the unbrotherly conduct of the legatee was.   If we were to hazard a conjecture, it would be that James B. Colt had, after the making of the will, sued his brother on a demand which he characterizes as "actual or pretended"—implying that he thought it, in part at least, unfounded.   If this was so we should infer that the testator's train of thought was this.   "I have inserted in my will a legacy to my brother which is much more than any real or pretended claim which he has against me.   But he has seen fit to sue me.   I will therefore revoke that legacy and let him recover whatever he can."   Viewed in this light it furnishes no reason why the testator should refuse to do any thing whatever for a brother, when he had such abundant means, and when he was at the time of the revocation giving so munificently to benevolent objects.

It may be well to take a somewhat different view of this will and codicil.

The strongest ground that can be taken for the respondents is, that there is virtually but one legacy to James B. Colt; that the testator had determined to divide all of his stock in Colt's Patent Fire Arms Company among certain persons in certain proportions, but not being certain how much he

should leave at his death, he gave certain specified amounts to the legatees, in the proportion in which he intended to divide his whole stock, and then gave as a part of the same bequest the indefinite residue in the same proportions. It may be urged that he adopted this course in lieu of bequeathing the whole at once in proportion to certain numbers. There is some plausibility in this claim. If it is correct there would be a clear revocation of the whole bequest. But the most that can be said of it with any certainty is, that this *may* have been his intention.

The claim is not corroborated by anything else in the will or codicils, unless it may be the unfriendly feeling exhibited by the testator toward the legatee. On the other hand there are a number of particulars which would create, to say the least, a strong doubt of the correctness of this construction. The facts, that the bequests are in form separate ; that the one in the case of James B. Colt is conditional, and the other not ; that the revocation names specifically the first bequest; and the improbability of the testator's neglecting to make any bequest to a brother, are all calculated to favor a different construction.

Regarding the law then as settled, that a second legacy will never be presumed to be a dependent legacy, but that on the contrary every legacy, independent in its terms, will be presumed to be independent, and to make it otherwise a clear intention must appear on the face of the will, or will and codicil, it follows that the second legacy to James B. Colt must be regarded as an independent legacy, and consequently not affected by the revocation.

It is further claimed on the part of the respondents that this case is not within the jurisdiction of the superior court, but that the remedy is solely in the hands of the court of probate. The case comes up on a demurrer, and of course we must assume that whatever is alleged in the petition is true. From this it appears that the will was proved and administration taken out in February, 1862. The petition is dated June, 1864, more than two years after. The estate was probably larger than any ever before settled in this state.

*Prima facie* it was the duty of the executors to pay the legacies more than a year before the date of the petition.

The legacies were payable by force of the will itself and it required no action of the court of probate to give the legatees a right to recover them. It is not customary to obtain any order for their payment. That an action would lie on the probate bond for the neglect or refusal of the executors to pay the legacy is not material. Such orders are obtained for the payment of debts, and yet suits will lie in the superior court, at least under some circumstances, against the executors on the probate bond to collect them. Swift says, that in this state whenever a legacy has become payable the legatee may bring an action at law and recover it. 1 Swift Dig., 455. Such actions before the superior court have frequently been sustained. *Goodwin* v. *Chaffee*, 4 Conn., 163 ; *Knapp* v. *Hanford*, 6 id., 170.

It is further insisted that there is adequate remedy at law, and therefore this petition in equity will not lie. Here again we must see what the petition alleges. The legacy is not of a pecuniary character, but of stock in an incorporated company. The petitioner is entitled to these specific shares of stock. It is not in the power of the executors to retain the shares and account to the legatee only for their value in money. The legatee can if necessary enforce the transfer of the stock to him by a bill in equity, and this is what the petitioner now asks of the superior court. *Cowles* v. *Whitman*, 10 Conn., 121. This alone would be sufficient to sustain this bill. But in addition to this, according to the allegations in the petition, the respondents have for more than a year before the commencement of this suit been receiving dividends on this stock. They have during this time been holding it in a fiduciary capacity liable to account to the petitioner. He alleges also that they refuse to render any account of what they have received, and he asks for a disclosure. These are peculiarly proper grounds for the interposition of a court of equity. The petitioner has no adequate remedy in a court of law.

We advise that the demurrer be overruled.

In this opinion the other judges concurred.