.JEANNIE T. HARD et al., as Administrators, etc., Respondents, *v.* LEURENDUS B. ASHLEY et al., Appellants.

A will and codicil must be taken and construed together as parts of one and the same instrument, and the dispositions of the will are not to be disturbed further than are necessary to give effect to the codicil.

.As to whether the Supreme Court, in the absence of any special circumstances, has jurisdiction of an action to compel an accounting by an executor, *quære.*

*It seems* the appropriate tribunal is a Surrogate's Court.

'The will of H., after various devises and bequests, all termed by him "bequests," among them a devise to Z. of a farm for life, remainder to her children, gave his residuary estate "to the same parties in the same ratio and proportion as are given and specified in the foregoing bequests, and for the purposes of the apportionment fixed the value of the farm at $15,000. By a codicil he revoked the devise to Z. and her children, describing it particularly, and gave to her "and her heirs" a legacy of $8,000 "in lieu and instead of said bequest." *Held,* that this revocation did not affect the right of Z. to a share in the residue, but that the will was to be read without other change in that regard than the substitution of the amount of legacy for the value of the farm devised in proportioning the shares under the residuary clause; that the testator used the word "heirs" in the codicil as the equivalent of "children" in the will, and his intent was that the children should take the same interest in the substituted gift as they had in the one revoked.

.Also, *held,* the fact that one of the legatees named in the will died before the testator did not affect the question of distribution under the residuary clause otherwise than as the result of her death her legacy lapsed, and her share in the residuary estate being undisposed of passed to the next of kin.

.L. and S., two of the legatees named in the will, made an agreement with D., plaintiff's intestate, a third legatee, that the shares given by the will to the three should be divided differently, increasing the share of the latter. Plaintiffs asked to have the shares divided in accordance with the agreement. L. and S. set up as a defense that the agreement was induced by fraudulent representations on the part of the intestate. On the trial, for the purpose of proving the false representations, L. and S. were each called as a witness by the other, and each testified to overhearing a conversation between the decedent and the other, and was asked to give that conversation. The question in each case was objected to, but was received subject to a motion to strike out. No motion to strike out was subsequently made. L. and S. were then asked whether, at the time of signing the agreement, they believed and relied upon the representations. This was excepted to and excluded. *Held,* error; that in the

absence of exceptions the question as to the admissibility of the testimony proving the representations was not the subject of review, and such testimony must be allowed its usual and natural effect; that the representations having been proved, the testimony of the witnesses, that they believed and relied upon them in executing the contract, was competent, and was not within the prohibition of the Code of Civil Procedure (§ 829).

*Tooley* v. *Bacon* (70 N. Y. 34) distinguished.
*Hard* v. *Davison* (53 Hun, 112) reversed.

(Argued December 10, 1889; decided January 14, 1890.)

APPEALS from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made at the June Term, 1889, which affirmed a judgment entered upon the report of a referee.

This action was brought by plaintiffs as the administrators of William M. Ashley, deceased, against the executor, with whom are joined the heirs at law and legatees of Isaac Ashley, to obtain an accounting by the executor and a distribution of the estate in his hands. The judgment gave effect, as against the appellants Leurendus B. Ashley and wife, to a certain agreement between them and the plaintiff's intestate, which provided for a disposition of the property of the testator, as between the parties to the agreement, other than that made by the will; their appeal is based wholly upon exceptions to certain rulings of the referee in the admission and rejection of evidence which are set forth in the opinion. The judgment also denied to the defendant Mrs. Zipporah E. Wilcox any share in the residuary estate.

By the first clause of the will of said Isaac Ashley the testator gave pecuniary legacies, of various amounts to nine relatives named.

The next clause is as follows :

*Second.* To Zipporah E. Wilcox, I give the use of my farm, on which she now resides, in the town of Greece, Monroe County, N. Y., during her life, and at her death I give and devise the said farm in fee to her children then living, in equal shares."

By the third clause, he gave a sum of money in trust for

two other relatives, the amount being dependent upon conditions mentioned.

By the fourth clause, he gave his "homestead dwelling," furniture, etc., to two other relatives jointly.

By the fifth clause, he gave his residuary estate " to the same parties, in the same ratio and proportions as are given and are specified in the foregoing bequests ; " and for the purpose of such apportionment, he fixed the value of the " homestead residence " at $20,000, and of the farm given to Mrs. Wilcox and her children at $15,000.

The second clause of the codicil reads as follows :

" *Second.* I did by said last will give to Zipporah E. Wilcox, of Greece, Monroe county, N. Y., the use of my farm in said town of Greece, during her life, and at her death did thereby give the said farm in fee tô the children of said Zipporah E. Wilcox, then living, in equal shares. I do now hereby revoke said bequest, as well the one to the children of said Zipporah, living at her death, as the one to said Zipporah herself, and in lieu and instead of said bequests, I do hereby give to said Zipporah E. Wilcox and her heirs, $8,000, payable as soon as may be conveniently, after my death."

Other facts appear in the opinion. ·

*Theodore Bacon* for Zipporah E. Wilcox, appellant.   The will and the codicil are to be construed together as if they were one instrument.   ( *Westcott* v. *Cady*, 5 Johns. Ch. 334, 343.) It is a settled and invariable rule not to disturb the prior devise further than is absolutely necessary for the purpose of giving effect to the posterior qualifying disposition.   (1 Jarman on Wills, 474.)   Where there is a clear gift in a will it cannot afterwards be cut down, except by something which, with reasonable certainty, indicates the intention of the testator to cut it down.   (1 Jarman on Wills, 479.)   Where it has been the manifest intention of the testator to dispose of his entire estate the will will be so construed, if possible, as to prevent partial intestacy.   ( *Vernon* v. *Vernon*, 53 N. Y. 351 ; *Lyman* v. *Lyman*, 22 Hun, 261 ; *Thomas* v. *Snyder*, 43 id. 14 ;

*Bates* v. *Hillman*, 43 Barb. 645.)  A codicil will not operate as a revocation of a provision in the will beyond the clear import of its language.  A codicil is no revocation of a will further than it is expressed.  (*Brant* v. *Wilson*, 8 Cow. 56 ; *Westcott* v. *Cady*, 5 Johns. Ch. 334, 343 ; *Kane* v. *Astor*, 5 Sandf. 470 ; 5 Seld. 113 ; *Wetmore* v. *Parker*, 52 N. Y. 451 ; *Collier* v. *Collier*, 3 Ohio St. 369 ; *Quincy* v. *Rogers*, 9 Cush. 291 ; *Carrington* v. *Payne*, 5 Ves. 404, 422 ; *Colt* v. *Colt*, 32 Conn. 422, 446 ; *Kindersley* v. *Leeds*, 2 Dr. & Sm. 62, 70 ; *Hinchcliffe* v. *Hinchcliffe*, Id. 96, 108.)  Where there is a general residuary clause in a will, if a specific legacy is revoked or becomes lapsed, it falls into the residue to be disposed of under the general clause ; but if the residue is given to several in common, and one of them dies, or the bequest is revoked as to one, his share goes to the next of kin.  (*Ackroyd* v. *Smithson*, 1 Bro. Ch. 503 ; *Floyd* v. *Barker*, 1 Paige, 480, 482 ; *In re Gibson*, 2 Johns. & H. 656 ; *Quincy* v. *Rogers*, 9 Cush. 291 ; *Wetmore* v. *Parker*, 52 N. Y. 450.)  The mere revocation of the first does not, without more, revoke the second bequest. (*Wright* v. *M. E. Church*, Hoff. 200, 238.)  If there be indications on the face of the will that it was used as a word of purchase, for example, as meaning " children," then its technical purport must give way, and it will be interpreted as a word of purchase.  (*Crawford* v. *Trotter*, 4 Madd. 361 ; *Morse* v. *Morse*, 2 Sim. 485 ; *French* v. *French*, 11 id. 257 ; *Bain* v. *Lescher*, Id. 397 ; *Wright* v. *M. E. Church*, Hoff. 202 ; *Burtis* v. *Doughty*, 3 Bradf. 287, 289 ; *Bailey* v. *Patterson*, 3 Rich. Eq. 156 ; *Collier* v. *Collier*, 3 Ohio St. 369.) Where the estate has once been clearly devised a revocation will not be implied " unless no other construction can fairly be put upon the language.  (*Colt* v. *Colt*, 32 Conn. 422, 423 ; *Doe* v. *Hicks*, 8 Bing. 475 ; *Wetmore* v. *Parker*, 52 N. Y. 450, 464.)

*P. M. French* for Leurendus B. Ashley et al., appellants. The evidence of Leurendus B. Ashley concerning conversations overheard by him between plaintiffs' intestate and the appel-

lant Susan M. Ashley, and the evidence of Susan M. Ashley concerning conversations overheard by her between the plaintiffs' intestate and the appellant Leurendus B. Ashley, was properly received. (Code Civ. Pro. § 829; *Carey* v. *White*, 59 N. Y. 336; *Badger* v. *Badger*, 88 id. 559; *Simmons* v. *Havens*, 101 id. 427.) The testimony of the defendants Eliza Ashley and Amanda Acker, which prove the falsity of the representations made, was competent. (*Holman* v. *Dord*, 12 Barb. 340; *Moore* v. *Oviatt*, 35 Hun, 216; *Hobart* v. *Hobart*, 62 N. Y. 80.) The testimony referred to in the first and second points was received subject to a motion to strike it out, which motion was not made, and as there is no exception to the ruling, it is properly in the case. (*Briggs* v. *Waldron*, 83 N. Y. 582.) The testimony of the appellants Leurendus B. and Susan M. Ashley that at the time of signing the contract, they believed and relied upon the representations proved, was improperly rejected. (*Tooley* v. *Bacon*, 70 N. Y. 34.) But if the court should hold otherwise, all the other facts and circumstances of the case, and especially the fact of signatures to the agreement, show for themselves that the appellants Leurendus B. Ashley and wife did believe and rely upon such representations. (Kerr on Fraud and Mistake, 75: *Taylor* v. *Guest*, 58 N. Y. 262, 266.) All of the evidence of the appellant Leurendus B. Ashley was competent and proper, certainly on behalf of the appellant Susan M. Ashley, because it was not offered "in his own behalf." (Code of Pro. 399; Code Civ. Pro. 829; *Carpenter* v. *Soule*, 88 N. Y. 251; *Brown* v. *Brown*, 29 Hun, 498; *Smith* v. *Meaghan*, 28 id. 424; 1 Dem. 368.) The representations proved were fraudulent, and the contract should be set aside because of them. (Story's Eq. Juris. §§ 191, 192; *Willink* v. *Vandermere*, 1 Barb. 607; *Whiteside* v. *Hyman*, 10 Hun, 220; 2 Pars. on Cont. [3d ed.] 267, 270; Kerr on Fraud and Mistake, 75.)

*W. A. Sutherland* for respondents. It is incompetent for a person interested in the event of the action to testify con-

cerning a personal transaction between the witness and the deceased. (*Tooley* v. *Bacon,* 70 N. Y. 37; *In re Hopkins,* 6 N. Y. S. R. 390; Code Civ. Pro. § 829; *Brague* v. *Lord,* 67 N. Y. 495.) The evidence of Leurendus B. Ashley, offered on behalf of his wife respecting personal transactions between himself and the deceased, was properly excluded. (*Muzzy* v. *Whitney,* 10 Johns. 226-229; *Hill* v. *Hotchkins,* 23 Hun, 414; *Hadsall* v. *Scott,* 26 id. 617, 618.) If a new trial should for any reason be granted, it should only be granted as to the issue raised by the party succeeding on this appeal. (*White* v. *Howard,* 46 N. Y. 144-169; Code Civ. Pro. § 1317.)

*P. M. French* for Leurendus B. Ashley et al. in opposition to appeal of Zipporah E. Wilcox. The defendant Wilcox cannot be heard upon this appeal because, although duly served with process, she has never presented any claim to the court nor made any demand for any relief. (Code Civ. Pro. § 1294; *Flake* v. *Van Wagenen,* 54 N. Y. 25, 27; *Avery* v. *Woodin,* 44 Hun, 266; *Goldsmith* v. *Goldsmith,* 15 J. & S. 184; *Maltby* v. *Green,* 1 Keyes, 548; *McMahon* v. *Rauber,* 47 N. Y. 67; *Innis* v. *Purcell,* 58 id. 388.) The objection that the defendant Wilcox is in default and has no right to be heard against the judgment in this action, is jurisdictional and may be raised for the first time in the Court of Appeals. (*Cook* v. *Whipple,* 55 N. Y. 15; *Fiester* v. *Shepard,* 92 id. 251; *Matter of Larson,* 96 id. 381-383; *McMahon* v. *Rauber,* 47 id. 72; *Wilmore* v. *Flack,* 96 id. 512, 519; *In re Larsen,* Id. 381.) By the terms of the codicil the entire amount of bequests, legacies or devises to Zipporah E. Wilcox or her children, either in the body of the estate or the residuum, was absolutely revoked. (*Wager* v. *Wager,* 96 N. Y. 164; *Post* v. *Hover,* 33 id. 593; Jarman on Wills, 465; *Robert* v. *Corning,* 23 Hun, 304; *Pierpont* v. *Patrick,* 53 N. Y. 591.)

GRAY, J. The first observation we make is with respect to the bringing of this action in the Supreme Court. There was no reason for resorting to another forum than that established by the statute for the final · settlement of an executor's

accounts. No objection appears to have been taken on the record. If it had been made, a grave jurisdictional question would have been presented. We do not wish to be understood, however, as assenting to this procedure. These proceedings belong, by law, to Surrogates' Courts, which were constituted to take jurisdiction of them, and the powers of which are appropriate and adequate for the purpose.

One of the questions brought up by this record arises upon the appeal of Zipporah Wilcox, and it relates to the effect of a codicil upon her rights as a residuary legatee under the will of Isaac Ashley. It revoked a bequest made in the will to her and substituted, in lieu thereof, a gift of a different value. Testator had made various bequests of money and of different kinds of property in the earlier clauses of his will, and by the fifth, a residuary clause, gave his residuary estate " to the same parties, in the same ratio and proportion as are given and specified in the foregoing bequests." For the purpose of establishing such proportions, he valued the real estate, comprised in the bequests, at certain stated sums. The effect was to create, for the purpose of a division of the residuary estate under that clause, sixty-four parts. Mrs. Wilcox, by the second clause, was given the use of a farm for life, with remainder to her children, etc., and, as that farm was valued at $15,000, her share as a residuary legatee would have been fifteen sixty-fourths. But the testator subsequently made a codicil, the second clause of which reads as follows :

" *Second.* I did by said last will give to Zipporah E. Wilcox, of Greece, Monroe county, N. Y., the use of my farm in said town of Greece, during her life, and at her death did thereby give the said farm in fee to the children of said Zipporah E. Wilcox, then living, in equal shares. I do now hereby revoke said bequests, as well the one to the children of said Zipporah, living at her death, as one to said Zipporah herself, and in lieu and instead of said bequests I do hereby give the said Zipporah E. Wilcox and her heirs eight thousand dollars, payable as soon as conveniently may be after my death, but not until the same and the other legacies by the said will,.

not herein revoked, can be paid by avails of the sale and disposition of my real estate without sacrifice in the sale thereof."

This provision was held below to operate as a complete destruction of Mrs. Wilcox's right to share in the residue. It was there deemed to evidence a radical change of intention, and that, as the residuary bequest was dependent upon the preceding bequest, with the revocation of that particular bequest, the gift of a share of the residue fell. I cannot agree in that view, for it seems to me to deny effect and operation to a most important principle of construction in such cases. I refer to that which demands that a will and a codicil shall be taken and construed together, in connection with each other, as parts of one and the same instrument, and that the dispositions of a will shall not be disturbed further than to the extent necessary to give effect to the codicil. This has long been the settled rule upon which courts have acted. (*Willet* v. *Sandford*, 1 Vesey, Sr. 186; *Westcott* v. *Cady*, 5 Johns. Ch. 334; *Pierpont* v. *Patrick*, 53 N. Y. 591; 1 Jarman on Wills, 176.) That principle derives its strength, however, not from authority so much, as from its own inherent force. The individual may execute any number of codicils, but all of the writings together constitue the will. The intent of the testator is then to be ascertained by a consideration of the whole, and the original testament is only affected, so far as there is any repugnancy in a codicil. A codicil is intended to add to, modify, or revoke, the prior will in the respects which may appear, and it cannot have any other operation than may be necessary to give effect to its provisions as the later expression of the testator's will. It follows that it could not operate as a revocation of previous testamentary dispositions; unless by some plain direction, or by force of the clear import of language in some inconsistent or repugnant provision. Here the clause of the codicil in question does not in terms revoke anything but the bequest of the farm; but it substitutes for that which is thus revoked a gift of a sum of money. The language "in lieu and instead of said bequests" seems to me to be entitled to considerable significance, and to warrant our reading the

original will without other change in that regard than the mere substitution of the gift of $8,000 in money for the gift of the farm. The use of the words "and her heirs" in the codicil, in connection with the gift of the money, should not be deemed to introduce any serious difficulty. By the will a farm was devised to Mrs. Wilcox for her life, and at her death " to her children, then living, in equal shares." It is very clear, from the reading of the codicil which repeats that precise language, that the testator took and used the word " heirs " in the sense of " children," and meant them to take the same interest in the substituted gift as they had in the gift which was revoked. The use of the word " heirs " was unnecessary to an absolute gift of the money to Mrs. Wilcox, and everything points to its employment to cover the children as before ; hence its technical purport must yield to the strong evidences of the testator's meaning.

The disposition of the residuary estate by the testator was its division among those certain persons to whom legacies had been previously given, and in that proportion to each which the stated value of his or her legacy bore to the aggregate value of all of those legacies. The subsequent execution of a codicil only affected that disposition by lessening the amount of the legacy to Mrs. Wilcox from $15,000 to $8,000. That did not strike her out as one of the persons denominated by the residuary clause as a residuary legatee. It left her in; but in lieu of the farm gave her a sum of money representing less in value than the farm was valued at. This change, effected by the codicil, operated to introduce a new divisor in the distribution of the residuary estate. In other words, in reading the will we take in the codicil, and, in place of the gift in the second clause of a farm valued at $15,000, we read a substituted gift of $8,000, and the disposition of the residuary estate proceeds upon precisely the same principle. I think, in that way, the clear and obvious purpose of the testator is given effect. His will spoke from the time of his death, and then it was evidenced by the will and the codicil taken together. How is it affected by the codicil? He has not directed a

revocation of the residuary disposition made by the will, and
as that included Mrs. Wilcox, in order to revoke it as to her,
we should have to say that a change by modification, through
a codicil, of a bequest to her, which formed simply a measure
of distribution of the residuary estate, operated to strike her
out of the number of residuary legatees.    That, in my opinion,
is an impossible implication.

The case of *Wetmore* v. *Parker* (52 N. Y. 450) is an
authority in point, as is the well considered case of *Colt* v.
*Colt* (32 Conn. 422), which is there cited with approval.   In
*Wetmore* v. *Parker* the testatrix gave her residuary estate
" to the several persons, corporations and societies to whom
I have hereinbefore made bequests and who shall be living
and existing and able to take the same, in proportion to
the amount given and bequeathed to them respectively."
A revocation by codicils, in part of a legacy in the will to
the Utica Female Academy and in whole of one to the
Reformed Dutch Church, for reasons stated by the testatrix,
was held not to affect the interests of those legatees in the
residuary estate.    It was said that the bequests were not
dependent in each case, and that " the reference to the first
in the last designates the legatee and the amount, but as
legacies they are independent.    They are for different pur-
poses; one for particular the other for general purposes."
And Judge FOLGER refers to the rule that an expressed
intention to alter a will in one particular, negatives, by impli-
cation, an intention to alter it in any other respect.

The case of *Colt* v. *Colt*, in the Connecticut court, was
cited as in point upon the question of whether the testa-
trix intended her residuary estate to go to those only who had
unpaid or unrevoked specific bequests at her death.    There
the testator bequeathed five hundred shares of the stock of the
Colt's Fire-Arms Company to his brother for life, and made other
bequests of the same stock.    In the residuary clause he
bequeathed his remaining stock in that company to the several
persons " to whom he had hereinbefore given legacies of
stock," in proportion to the amount bequeathed.    In a codicil

he revoked the bequest of the five hundred shares to his brother, "for reasons growing out of his late unbrotherly conduct towards me." It was held that the brother's right to take under the residuary clause was not affected by the codicil. The ground taken was that the second legacy was not dependent upon the first, and, therefore, notwithstanding the reason stated, the revocation of the first legacy did not revoke the second legacy. These decisions proceeded upon the plain principle that where a devise is made of an estate, a revocation will not be implied, unless no other construction can be placed upon the language. These cases are in point and the principle of their decision should govern our conclusions here. I think, therefore, that the judgment of the court upon the question of distribution should direct it to be made upon the basis of the proportion which the previous bequest to each legatee bore to the aggregate amount of the specific legacies given, and, as by the change in the amount of the bequest to Mrs. Wilcox, that aggregate amount became $57,000, her share in the residue would be eight fifty-sevenths.

The fact that one of the legatees, Lucretia Rice, pre-deceased the testator does not affect the question of distribution, otherwise than that, as the result of her death was to cause her legacy to lapse and to fall into the residue, her share in the residuary estate is undisposed of and passes to the next of kin. The lapse, by death, of the legacy does not disturb the proportions, and, of course, it does not become distributable among the other legatees. As to that portion of the residuary estate the testator died intestate. (*Floyd* v. *Barker*, 1 Paige, 482, and cases cited.)

The other question, presented by the record before us, arises upon the appeal of Leurendus B. and Susan M. Ashley. They were legatees under Isaac Ashley's will, and, it seems, made an agreement with the plaintiff's intestate, also a legatee, by which the property given by the will to the three should be differently divided; so that the intestate's share, which was relatively quite small, should be largely increased and the shares of Leurendus and Susan Ashley correspondingly

reduced.   This agreement is set up by the plaintiffs as the basis of their right to recover, in the distribution of the assets in the executor's hands, otherwise than as provided for their intestate in the will.   The effect of the agreement is sought to be avoided by the defense of fraudulent representations in its procurement.   Upon the trial, in order to prove what statements were made by the intestate to Leurendus and to Susan Ashley, and which were at a time prior to the execution of the agreement, each of these persons was called as a witness, and, after having testified to overhearing a conversation between the intestate and the other of them, was asked to give that conversation.   The question in each case was objected to, but the evidence was received subject to a motion to strike it out.   That evidence established the making of statements by the deceased for the purpose of inducing, through the fear of litigation and through the hopes of gain by the promise of others releasing their shares in the residue, a compromise ; as the result of which his share in the assets should be increased and all opposition to the probate of the will withdrawn.

No motion appears from the record to have been made to strike out the evidence of either of these witnesses, and, in the absence ef exceptions properly taken to the rulings of the court, the admissibility of the evidence received cannot become the subject of review in the appellate court, and the evidence must be allowed its usual and natural effect.   Such being the condition of the case, the testimony of Leurendus and Susan Ashley, that, at the time they signed the agreement, they believed and relied upon the representations of plaintiffs' intestate, was improperly rejected, and the exception to the rulings in that respect must be sustained.   Representations had been proven in the case, which were of such a nature as to induce them, by the motives of fear of the results of a litigation and of the hopes of advantage to them in a compromise, to agree to the arrangement proposed by the deceased legatee.   The question then was as to whether

these representations were believed in and relied upon when the agreement was signed. That was a question of fact, and, like all other facts, a matter of proof. As evidence, its weight. and influence are questions for the jury, or referee. From the case of *Seymour* v. *Wilson* (14 N. Y., 567) the competency of such proof has been recognized. The fact was relevant and material, and the witnesses were competent to testify to it, unless their evidence fell, as it is insisted it does fall, within the prohibition of section 829 of the Code of Civil Procedure. Was it incompetent because it concerned a personal transaction between the witness and the deceased? I do not think so. What led to the making of an arrangement, and the negotiations which shaped it, had all taken place between the parties at a time prior to the execution of the contract. This contract was the effect of the agreement, upon which the minds of the parties had met in consent. When, therefore, it was presented to the witnesses for their execution, their belief or reliance in the statement, which the deceased had theretofore made, were relevant facts, within their own knowledge and which the deceased could not have known or testified to himself. If he were living, he could not have contradicted their testimony in that respect. As was said in *Wadsworth* v. *Heermans* (85 N. Y., 639), " the spirit and purpose of this provision of the Code is. equality to prevent undue advantage; and that purpose should be kept in view when border questions arise and lines of distinction are to be drawn." If we are to give to the language " concerning a personal transaction," so broad a signification as to exclude the evidence of facts not constituting the transaction and not proving any communications. between the parties, and which had nothing to do with their negotiations, we should be using the Code provision as an instrument to work inequality, and therefore injustice. The condition of the minds of the witnesses, when they consummated their agreement by executing the contract, neither proved, nor disproved the personal transaction between them and the deceased. That had been proved, and the proof.

of their state of mind as to belief in, or reliance upon, what they had been informed of was not a matter of which the deceased could have had any knowledge and with which he was not concerned at the time.

This case differs from *Tooley* v. *Bacon* (70 N. Y., 34). That was an action for money had and received, and the defense was that the property was placed in the intestate's hands for the purpose of defrauding creditors. It was held. that the intent characterized the transaction and was an element of it, and proof of the intent in conveying property to the intestate was held properly excluded. I suppose it was considered that the proof of the intent in conveying would have been proof of the act itself. I think that case was very close, indeed, to the border line, and, while, upon the particular facts, it may be deemed a controlling authority, we should not extend its control over a case like the present, where the excluded evidence would neither have affirmed, nor have negatived, nor have characterized the transaction.

We are not here called upon to decide upon the admissibility of the particular evidence constituting the proof of the misrepresentations of the deceased. It may be that it was not competent to prove them in that way ; but, assuming that it was incompetent and inadmissible, if properly objected to, we should still reverse the judgment and order a new trial. Upon a new trial it may be that sufficient and competent evidence may be produced to establish the defense to the agreement. At any rate we cannot say that none such is possible, or available to the appellants.

The judgment appealed from should be reversed and a new trial ordered, upon the appeal of Leurendus B. Ashley and Susan M. Ashley ; while upon the appeal of Zipporah Wilcox the judgment to be entered should direct the executor to distribute the assets in his hands, in accordance with the principle of our opinion.

All concur.

Judgment accordingly.

# MEMORANDA

OF THE

*CAUSES DECIDED DURING THE PERIOD EMBRACED IN THIS VOLUME, WHICH ARE NOT REPORTED IN FULL.*