In the Matter of the Probate of the Last Will and Testament of NEWELL CABLE, Deceased.

BERTHA W. WILLIAMS and Others, Appellants; FIRST METHODIST EPISCOPAL CHURCH OF WALTON, N. Y., and Others, Appellants, Respondents; JOHN G. MORE, Executor, etc., of NEWELL CABLE, Deceased, Respondent.

Third Department, May 26, 1925.

Wills — construction — revival of revoked codicils — codicil is integral part of will — intentional destruction by burning of revoking codicil does not revive prior codicils revoked by it — oral declarations by testator at time of destruction of revoking codicil do not revive prior codicils — declarations are admissible to show intent in destroying or revoking codicil — execution of subsequent codicils revived codicils revoked by burned codicil but did not revive that codicil.

The codicils to a will are a valid integral part of the testamentary disposition and anything that will revive a will under the provisions of section 41 of the Decedent Estate Law will revive a codicil thereto unless a contrary intention is shown.

Where a codicil which revokes prior codicils is intentionally destroyed by burning, and is thereby revoked, the effect is not to revive the prior codicils revoked by it.

Oral declarations made by the testator at the time he burned the codicil to the effect that the will was then as he wished it, do not have the effect of reviving the prior codicils which had been revoked by the codicil which was burned.

The declarations of the testator, however, are admissible to show the intent he had in destroying or revoking the codicil in connection with the question whether or not subsequent codicils were intended to revive the codicils revoked by the one which was burned.

Where the testator, after the burning of the codicil, executed two more codicils by which he purported to ratify and confirm his last will and testament, the subsequent codicils had the effect of reviving those codicils which were revoked by the one which was subsequently burned, but they did not have the effect of reviving the burned codicil, since that codicil was not in existence when the subsequent codicils were executed, was never a part of the will, not having been attached thereto, and it was the evident intention of the testator not to revive the codicil that he burned.

H. T. KELLOGG, J., dissents.

APPEAL by Bertha W. Williams and others from that part of a decree of the Surrogate's Court of the county of Delaware, entered in the office of said Surrogate's Court on the 1st day of December, 1924, admitting to probate the 3d, 4th and part of the 5th codicils to the will of Newell Cable, deceased.

Appeal by Vernon W. Cable and others from that part of said decree which admits to probate the 4th and part of the 5th codicils to said will.

Appeal by the First Methodist Episcopal Church of Walton, N. Y., and others from that part of the decree holding that a cer-

tain codicil dated February 3, 1923, was duly executed, and at the time of the execution the testator was competent and not under restraint or undue influence.

The opinion of the surrogate is reported in *Matter of Newell Cable* (123 Misc. 894).

*A. L. O'Connor,* for the contestants, appellants.

*Arthur E. Conner,* special guardian, appellant.

*John G. More* [*Arthur G. Patterson* of counsel], for the executor, respondent.

*Arthur G. Patterson,* for the residuary legatees, appellants, respondents.

VAN KIRK, J.:

On November 16, 1923, Newell Cable died leaving a last will and testament, dated January 15, 1912, to which were physically attached codicils numbered consecutively from 1 to 11. In his will he gave his residuary estate to a niece, Bertha W. Williams. By the 3d codicil he revoked this residuary clause and gave the residue, share and share alike, to his nephews and nieces. By the 4th codicil he revoked the part of the 3d codicil which gave the residue to nephews and nieces and in place thereof gave the residue to six churches named. In the 5th codicil he revoked the bequest in the 4th codicil to the First Baptist Church of Walton and gave it to the Free Methodist Church. There was another codicil, not numbered, which was executed by Newell Cable February 3, 1923, between the dates of the 9th and 10th codicils. By this codicil he revoked the provisions of the 4th and 5th codicils giving the residue to the six churches, and in place thereof gave to each of seven churches $1,000 and the residue of his estate to thirteen nephews and nieces, one of whom was Bertha W. Williams. At that time Newell Cable was an old man, sick at his home, where he had for many years been living with Bertha W. Williams. She told testator's attorney, John G. More, who drew the will and all of the codicils, that Mr. Cable wished to make a codicil to his will and gave the instructions as to its contents. More so prepared it. She shortly thereafter telephoned More to come up to make out the income tax reports for Mr. Cable and to bring the codicil. After the income tax reports had been completed the codicil was produced and was executed by Newell Cable. So far as appears he had never seen or heard of it before. About two weeks later Mr. Cable went to the home of Mary Cable in Walton. Attorney More was called to the house and Mr. Cable said to him

33

that he had not wanted to sign the paper which he signed the other morning; he had never told More to draw it up and More replied, " that is true; " he did not want to make any changes; his will was as he wanted it; he got to town just as soon as he was able. He sent More to his office to get the paper and on More's return said: " I want it burned up." In the presence of three witnesses it was burned and Mr. Cable then said: " I have the thing back as I want it now." The surrogate has found that this destroyed codicil was executed in compliance with the statute (Decedent Estate Law, § 21) and was a valid testamentary paper. Every codicil contained this introductory paragraph: " I, Newell Cable of Walton, Delaware County, New York, having made my last Will and Testament bearing date the 15th day of January, 1912, do now make, publish and declare this codicil thereto, which is to be taken as an addition to and a part of my said last Will and Testament." Also this clause: "And I hereby ratify and confirm my said last Will and Testament in every respect save so far as any part of the same is inconsistent with this codicil " (this is the wording in the 1st codicil; Mr. More says that in drafting each codicil he used the same form; in all the later codicils the scrivener has evidently by oversight changed the word " save " to " in "), except that in the 2d, 3d, 4th and 5th codicils he inserts, after the words " last will and testament " the words " and codicil thereto." The above facts are undisputed, except that the residuary legatees under the 4th and 5th codicils claim that, when the destroyed codicil was executed, Newell Cable acted under undue influence and restraint. The surrogate has admitted the will and the eleven codicils to probate.

Assuming that the destroyed codicil was a valid testamentary instrument, the first question we consider is whether the 4th and 5th codicils, revoked by the destroyed codicil, had been revived and were at the time of Newell Cable's death a part of the testamentary disposition of his estate. This revocation did not revive the 4th and 5th codicils, which had been thus revoked, nor were the declarations of the testator at the time and after the destruction of the paper sufficient to revive these codicils. To revive a will it must be republished in compliance with the statutory requirements for the publication of a will. (*Matter of Kuntz*, 163 App. Div. 125.) If those codicils be revived, it resulted from the publication of the 10th and 11th codicils. In section 2 of the Decedent Estate Law is this definition: " The term ' will,' as used in this chapter, shall include all codicils, as well as wills." Section 41 of the Decedent Estate Law provides: " Canceling or revocation of second will not to revive first. If, after the making of any will, the testator shall duly make and execute a second will, the destruc-

tion, canceling or revocation of such second will, shall not revive the first will, unless it appear by the terms of such revocation, that it was his intention to revive and give effect to his first will; or unless after such destruction, canceling or revocation, he shall duly republish his first will." This statute provides specifically for the reviving of a prior will (including codicil), which had been revoked by republishing it. Under section 41 a republishing is not simply a redeclaration or a reacknowledgment of a prior or valid will, but it accomplishes the revival of a revoked or dead will. If then a codicil is a part of the will it is revived when the will is revived, unless a contrary intent is disclosed. It is established in our courts that a codicil duly executed becomes a valid, integral part of the testamentary disposition; it does not revoke the will except in the particular respects stated in the codicil, or in those respects in which the codicil is absolutely inconsistent with provisions of the will. It modifies or changes in part the will and with the will is to be read and executed as one entire instrument. (*Bloodgood* v. *Lewis,* 209 N. Y. 95; *Ward* v. *Ward,* 105 id. 68.) The 10th and 11th codicils were duly executed with all the statutory formalities. So far as our statute and our decisions require every thing was done by this testator to revive these two codicils. In our view the execution of the 10th and 11th codicils was a republication of the 4th and 5th codicils and revived them, if such was the intention of the testator. (*Brown* v. *Clark,* 77 N. Y. 369; *Matter of Campbell,* 170 id. 84.) Whether a former codicil is revived depends upon the testator's intention, which is to be deduced from all the circumstances. (*Williams* v. *Williams,* 142 Mass. 515.)

The plain intent of the testator must control when it does not run counter to established law or public policy. Evidently the testator believed that, when he burned the codicil of February third, he revived the 4th and 5th codicils and left the disposition of his estate at that time as provided in his will and the nine codicils, and such was his intent. This intent is not only shown by the circumstances, but is disclosed by the undisputed declarations of the testator at the time he burned the codicil. It is true that such declarations are inadmissible to aid the interpretation of the provisions of the will. If admitted for such purpose they might tend to overthrow the words of the written instrument and oral declarations cannot be authenticated in the manner required for a valid testamentary disposition of property. (Wigm. Ev. § 2471.) But the declarations are admissible to show intent, motive or plan, if they are statements " of a present existing state of mind " accompanying the act in question and " appear to have been made in a natural manner and not under circumstances of suspicion." The

intention or plan in mind can generally be shown by some act or speech only and, when the person is dead, evidence thereof is often not only the best but the only evidence of what was in his mind at the time. (Wigm. Ev. § 1725; *Commonwealth* v. *Trefethen*, 157 Mass. 180, 185.) A design to do or not to do a specific act is always relevant to show that the act named was or was not done. (Wigm. Ev. § 1735.) Under our statute (*supra*) these declarations were not sufficient to show that the revoked codicils were revived. They are relevant to show the intent with which the revocation of the burned codicil was made. It is said in *Matter of Kennedy* (167 N. Y. 163, 173): " The general rule is that where an act is done, to which it is necessary or important to ascribe a motive or a cause, what was said by the actor at the time, from which the motive or the cause may be collected, is part of the *res gestæ* and may be given in evidence."

These two codicils, as is true of all save the burned codicil, were never detached from the will; in the majority of them the testator simply revoked a $1,000 bequest because he had advanced the payment of it; he could not have intended to republish the will itself and not republish these codicils. He intended to republish all the codicils at the time attached to his will; with the will they stated his completed testamentary plan. The burned codicil stands differently. There is no proof in the case that the instructions for the preparation or the contents of the burned codicil were ever given by the testator; the evidence shows the contrary. As soon after its execution as he was able to reach Mr. More he demanded the paper and that it be burned; and, having been burned, he declared in substance that his will was then as he wanted it to be; that the burned codicil was never his will. Though in law it was properly executed, in fact he never intended it to express his testamentary wish. There is nothing in the record tending to show that he ever changed this intention so unequivocally demonstrated. The burned codicil was never attached to his will and was not in existence. He had not simply revoked it by a later codicil as was his practice, he burned it; he meant to be rid forever of the paper he never desired to execute. We think it is a fair inference that this pronounced intent and plan continued. On what can it be found that he ever changed this intent or that he intended to revive or recognize the burned codicil? In 40 Cyc. 1217, is this: " A codicil may, by referring in adequate terms to a revoked will, revive that will if it be in existence, but not if it has been burnt or otherwise destroyed." Had the testator intended to revive the burned codicil he would certainly have rewritten it and would not have left its provision to the uncertainty of memory.

We have concluded that, by publishing the 10th and 11th codicils he revived and gave effect to the 4th and 5th codicils, but did not revive the burned codicil. It would involve a curious inconsistency of intent to hold that he intended to revive the two codicils and at the same time and by the same act he intended to revive the codicil which would on the instant revoke them. Of this testator's intention there can be no doubt; this plain intention, no law or statute forbidding it, we conclude should be made effective. We find no sufficient reason for denying him his will. (See *Matter of Fowles*, 222 N. Y. 222, 232, 233.)

Since we have reached this conclusion it is not necessary to determine whether or not there was evidence which should have been submitted to the jury tending to show that the destroyed codicil was executed under restraint or undue influence. If it were, the result would be the same as above reached.

As to the English cases cited we quote from *Matter of Conway* (124 N. Y. 455, 460): " A brief reference to the state of the law relating to the execution of wills in England will make it apparent that neither the decisions of its courts nor the rules deduced therefrom by English text writers can be made applicable to cases arising under our statute."

We find no errors in the record which were prejudicial. The decision of the surrogate should be affirmed, with costs to the executor respondent payable out of the estate.

All concur, COCHRANE, P. J., in the result, except H. T. KELLOGG, J., dissenting.

Decree affirmed, with costs to the executor respondent payable out of the estate.