In the Matter of the Estate of ANCIL GREENBERG, Deceased.*

Surrogate's Court, Kings County, November 13, 1931.

* See, also, *Matter of Simeone* (141 Misc. 737).

*Max D. Steuer [Abraham L. Bienstock* of counsel], for the petitioner.

*William Stanley Miller [Charles F. Hulseman* and *Bessie Goldstein* of counsel], for the executor.

*Frederick A. Keck,* special guardian.

WINGATE, S. The question here presented for determination relates to the right of a widow to exercise the election provided by the new section 18 of the Decedent Estate Law, added by section 4 of chapter 229 of the Laws of 1929, which went into effect on September 1, 1930. The testator made and executed a will bearing date December 21, 1927, by the terms of which he cut off his widow with a bequest of one dollar.

Under date of October 30, 1930, he executed a codicil to this will, and on January 3, 1931, he made a further codicil.

During this entire period, from the time of the execution of the will up to his death, testator and his wife were estranged and were living apart pursuant to a judgment of separation in an action brought for that purpose by the wife. By the terms of this judgment, she was denied alimony, although custody of minor children was granted to her and she was awarded an allowance for their support.

The will contained fifteen items, the relation of which to the first codicil is worthy of brief note. By the first item in the will testator directed the sale and conversion of his entire property except certain corporate stock. This was not affected by the subsequent codicils. By the second item he bequeathed to his wife the sum of one dollar, which bequest was not subsequently altered. The third, fourth, fifth, sixth and seventh items provided for general legacies aggregating $6,000, and were respectively revoked by the second, third, fourth and fifth items of the first codicil. The eighth item of the

will bequeathed to Max Greenberg testator's interest in his cooperage business and a one-half interest in his garage business, plus the sum of $2,500. By the sixth item of the first codicil the $2,500 bequest was revoked, but the gifts of interest in the businesses were confirmed " with the same force and effect as if recited and reiterated in this codicil." The ninth item of the will, providing for a $2,500 legacy to testator's son-in-law, was revoked by the fourth item of the first codicil. The tenth item of the will, giving a $4,000 legacy in trust for testator's daughter, Mildred, was in no wise affected by the codicils. The eleventh, twelfth and thirteenth items of the will, which gave general legacies of $6,000 and disposed of the residue of the estate, were revoked by the seventh, eighth and fourth items of the first codicil respectively. The fourteenth item of the will provided for the manner of the testator's burial. The fifteenth and last item appointed George Shapiro executor. The first item of the first codicil added Charles F. Hulsner as coexecutor.

From this analysis it appears that the only dispositive provisions of the will which were not altered by the first codicil were three in number: *First*, the one dollar legacy to the widow under item second; *second*, the specific bequest of the cooperage business and one-half of the garage business to the son under item eighth; and, *third*, the trust legacy of $4,000 to testator's daughter, Mildred, under item tenth. Every other disposition of his property made prior to September 1, 1930, the effective date of the new statute, was revoked and a new disposition made after that date.

The first codicil began as follows: " I, Ancil Greenberg, do make, publish and declare this Codicil to my last will and testament, dated December 21, 1927."

The nineteenth item read as follows: " I hereby ratify and confirm my said last will and testament in every respect save so far as any part of the same is inconsistent with this codicil."

The attention of the contending parties has been directed almost wholly to the question of whether or not the execution and publication of the first codicil, with this express ratification of the portions of the will not inconsistent therewith, operated as a republication of the will. While, in the estimation of the court, this question is by no means the decisive issue in the case, the state of the law on the subject, and the general effect of subsequent upon prior testamentary documents, is worthy of attention.

It is, of course, a fundamental principle of construction that, in determining the devolution of the property of a testate estate, all duly executed testamentary documents are to be construed together, and the composite direction ascertained. This doctrine

has been repeatedly affirmed and applied. As is said in *Caulfield* v. *Sullivan* (85 N. Y. 153, at p. 160): " The codicil distinctly referred to and identified the will and reaffirmed the same, and hence the will and the codicil together constituted the will of the testator; the provisions of the former may be treated as embodied in the latter, and both may be treated as if executed and published at the same time."

Similar statements are found in a very considerable number of opinions in other cases, among which may be noted: *Hard* v. *Ashley* (117 N. Y. 606, 613); *Herzog* v. *Title Guarantee & Trust Co.* (177 id. 86, 91); *Matter of Cable* (213 App. Div. 512, 515; affd., 242 N. Y. 510).

One of the legally recognized methods of revocation of a testamentary direction is by a subsequent, duly authenticated document. (Dec. Est. Law, § 34.) It follows that any subsequent lawful testamentary act which evidences an intent either expressly or impliedly inconsistent with an earlier gift, effects a *pro tanto* revocation (*Osburn* v. *Rochester Trust & S. D. Co.*, 209 N. Y. 54, 58), and such revoked direction is thereby rendered a permanent nullity unless a later duly authenticated testamentary act either expressly or impliedly makes an identical direction *de novo* (*Osburn* v. *Rochester Trust & S. D. Co.*, *supra*), since a revoked will or portion of a will has no more effect than if it had never existed. (*Matter of Stickney*, 161 N. Y. 42, 46.) The mere destruction of the subsequent revoking instrument does not revive the revoked gift. (*Matter of Wylie*, 162 App. Div. 574, 586; *Osburn* v. *Rochester Trust & S. D. Co.*, 209 N. Y. 54, 58; Dec. Est. Law, § 41.)

If these basic principles are borne in mind, it will be obvious that much of the language in the cases respecting a " revival " of a previously revoked testamentary direction is inaccurate and misleading. Since a direction, when revoked, becomes a nullity, its subsequent validization is not a revival, because a nullity cannot be revived. The later effectiveness of the direction is due solely to the act which has later been performed by the testator, in his expression of a desire that the direction previously made and revoked, shall be effective. If the former revoked direction is not reinstated *in hæc verba*, but only by a reference to the instrument in which it was originally inserted, its effectuation is obviously due solely to the fact that such inclusion forms an exception to the general New York doctrine that effect will not be given to an incorporation by reference in a testamentary document. (*Cook* v. *White*, 43 App. Div. 388, 393; affd., 167 N. Y. 588; *Matter of Cable*, 213 App. Div. 512, 516; affd., 242 N. Y. 510.)

It is unquestionably this thought on which is based the long and

ever-growing line of decisions which determines that a prior testamentary instrument which is duly referred to in a later one, if in existence, is thereby republished, and made to speak from the date of the latter. It is merely a case of incorporation by reference in like manner as in a case of reinstatement of a gift nullified by intermediate revocation. The reference to the earlier document in effect places the earlier one in the later, in all respects as if its provisions, as far as not modified by the incorporating instrument, were fully repeated in the latter. That the first testamentary instrument, in so far as unrevoked, would have been admissible to probate without its incorporation in the later document, is immaterial on the question of the effect of the act of the testator in reaffirming it and thus incorporating it in the later document. On primary principles, every man is presumed to intend the natural consequences of his acts, and the inevitable consequence of such reaffirmation is an incorporation of the provisions in the later instrument for all purposes.

As bearing particularly on the presently pertinent problem, the fact that the testator may not have realized the full legal consequences of his act, is no more material in this connection than in any other branch of the law. (*Matter of Welton*, 141 Misc. 674, and cases cited.)

Cogent language in a case in point is found in the early decisions of *Salmon* v. *Stuyvesant* and *Root* v. *Stuyvesant* (16 Wend. 320, and 18 id. 257), which are really substantially the same case. There testator made a will in 1828, leaving his real estate in trust with power to lease for a term of not over sixty-three years. In 1830 the Revised Statutes went into effect, limiting a lease to twenty-one years. In 1833 testator executed a codicil making some minor alterations in the will and republishing it. The respondent asked the court to construe the will in his favor on the theory that the testator did not understand the Revised Statutes.

The court, in determining that the codicil brought the will within the Revised Statutes, said (16 Wend. 320, 331): "I can no more consent to the nullification of a legal operative will, on the ground that it brings the affairs of the estate into a supposed unfavorable posture, than I can join in rectifying a bargain which turns out to be unfavorable to the party."

Certain excerpts from the later opinion, reported in 18 Wendell, 257, are peculiarly apt in their applicability to the case at bar. At page 286 the court says: "It is said that when this will was made, all its provisions were legal. That is true of the original execution in 1828. But this will was made when it was republished by the testator, in 1833, and then the power to lease was void."

At page 298: " I must be permitted to ask, with great deference, but certainly with some emphasis, upon what authority are we to assume that this testator did not know the law? Has such a principle of construction been before acted upon? So far from that, the principle has often been denied. Through all the changes of the statute or common law, in all departments of business and duty, it has been the maxim of courts, that every citizen knew and was bound to know the legal rules by which his contracts, his wills, and his conduct were to be governed; and that the law of the land entered into and was to be read with and made a part of them, as if it had been actually recited."

At page 302: " In judging of intent, another rule forces itself upon us equally imperative with any which we have before considered; it is, that every man shall be held to intend the legal consequences of his own act. I have already remarked, that we are to read this will just as if the testator had incorporated in it all the provisions of the Revised Statutes any way applicable; and then declared, that so far as those statutes allow, he desired his will might prevail, and that it should be void in those respects only wherein they declared it should be invalid."

Whatever the original basis for the rule, the principle seems now established beyond peradventure that " a codicil executed with the formalities required by statute for the execution of wills, operates as a republication of a will as far as it is not changed by the codicil " (*Brown* v. *Clark*, 77 N. Y. 369, 375); " and that the will thereby republished speaks from the date of the codicil " (*Matter of Campbell*, 170 N. Y. 84, 86).

Among the almost innumerable cases which support this thesis, the following may be noted in addition to those hereinbefore cited: *Mooers* v. *White* (6 Johns. Ch. 360, 374); *Van Cortlandt* v. *Kipp* (1 Hill, 590, 593, affd., *sub nom. Kip* v. *Van Cortland*, 7 id. 346, 349); *Ayres* v. *Methodist Episcopal Church of the City of N. Y.* (3 Sandf. 351, 361); *Van Alstyne* v. *Van Alstyne* (28 N. Y. 375); *Caulfield* v. *Sullivan* (85 id. 153, 160); *Hard* v. *Ashley* (117 id. 606, 613); *Matter of Conway* (124 id. 455, 463); *Cook* v. *White* (43 App. Div. 388, 392; affd., 167 N. Y. 588); *Herzog* v. *Title Guarantee & Trust Co.* (177 id. 86, 91); *Matter of Brann* (219 id. 263, 265); *Matter of Cable* (213 App. Div. 512, 515, 516; affd., 242 N. Y. 510); *Illensworth* v. *Illensworth* (110 App. Div. 399, 400); *Matter of Lawler* (195 id. 27, 30); *Decker* v. *Hoag* (101 Misc. 474, 479, 480).

As a conclusion, if the question be determinable on the basis supposed by the main argument of the parties, it must be decided that the act of the testator in executing the codicil of October 30, 1930, on well-established principles, inevitably resulted in a

reaffirmation of his entire testamentary disposition subsequent to the effective date of the statute; that he must be held to have intended the natural consequences of his act, with its legal result of bringing his testamentary plan within the provisions of section 18 of the Decedent Estate Law as amended, wherefore, the widow is entitled to invoke the provisions of this statute.

In the opinion of the court, however, the entire question is solvable on a much simpler and more direct basis through the process of construction of the law itself.

The statute (Dec. Est. Law, § 18) was enacted by chapter 229 of the Laws of 1929, and so far as presently material reads as follows: " Where a testator dies after August thirty-first, nineteen hundred and thirty, and leaves a will thereafter executed and leaves surviving a husband or wife, a personal right of election is given to the surviving spouse to take his or her share of the estate as in intestacy, subject to the limitations, conditions and exceptions contained in this section." Disregarding for the present, the " limitations, conditions and exceptions " referred to in the last clause of the quotation, it is apparent that the right of election, on the wording of the statute, is conditioned on three, and only three matters, namely, that (1) testator died after August 31, 1930; (2) he left a surviving wife; and (3) he left a will executed after August 31, 1930.

The first and second conditions are conceded to exist. The sole issue is as to whether or not he left a will executed after August 31, 1930, within the contemplation of the statute.

It is conceded that he left two testamentary instruments which were so executed, the one on October 30, 1930, and the other on January 3, 1931. The question presented, therefore, is whether either or both of these instruments falls within the terminology of a " will " as this word is used in section 18.

The incorporation of this new section into the Decedent Estate Law makes it an integral part of that statute. All provisions therein contained are, therefore, to be viewed as a composite entity. Obviously, therefore, the meaning attributed to any words in any part of the law are to be governed by the definitions of their connotation enjoined by the Legislature.

Section 2 of the Decedent Estate Law reads as follows: " § 2. Definitions. The term ' will,' as used in this chapter, shall include all codicils, as well as wills."

That such definition represents the customary legal thought on the subject is demonstrated by the fact that a substantially identical terminology in enjoined in subdivision 4 of section 314 of the Surrogate's Court Act, and that like statutes have been adopted in a large majority of the other States of the Union, among others,

in Arizona, California, Colorado, Delaware, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, North Carolina, North Dakota, Ohio, Oklahoma, South Dakota, Utah, Virginia, West Virginia, Wisconsin and Wyoming.

In reality, a codicil is merely a " little will." (*Osburn* v. *Rochester Trust & S. D. Co.*, 209 N. Y. 54, 57.) The definition of a will given by Blackstone as " the legal declaration of a man's intention to be performed after his death," which has received almost universal acceptance, is equally applicable to such a direction whether contained in a document purporting to be the sole dispositive instrument of a decedent, or in the first of several. As is noted by the Court of Appeals in *Matter of Cunnion* (201 N. Y. 123, 126), " more than one will may exist at the same time." The late Surrogate FOWLER expressed the same underlying thought in *Matter of Francis* (73 Misc. 148, 161), saying: " Any writing may be a will if executed pursuant to the Statute of Wills *animo testandi.*"

Several additional definitions of a will, based on the common-law conception, are given in *Matter of Davis* (45 Misc. 554, 556, 557), but in all no presently material distinction exists between wills and codicils. Both instruments must be executed in the same manner, both are directed to the regulation of the temporal affairs of the decedent after his death, and both are subject to the same laws and rules of construction. In popular conception the document designated a will is commonly supposed to express the main body of the testamentary wishes, and the codicil supplements thereto. That such is not necessarily the fact is aptly illustrated by the facts of the case at bar in which only three gifts (including the one dollar to the widow) are presently effective in the " will," whereas the bulk of the benefits are contained in the " codicil."

It follows, therefore, that when the question is viewed either from the terminology enjoined in the Decedent Estate Law itself, or the actual relation of a codicil to the affairs of the decedent, it must be determined that this decedent executed a " will " within the meaning of section 18 subsequent to August 31, 1930, wherefore the provisions of the enactment are applicable to his property.

It is a well-established principle of statutory construction that any enactment is to be read in the light of history and the general purpose of the law and the changes sought to be effected thereby. (*Matter of Hamlin*, 226 N. Y. 407, 414; *Archer* v. *Equitable Life Assurance Society*, 218 id. 18, 22; *City Bank Farmers' Trust Co.* v. *N. Y. Central R. R. Co.*, 253 id. 49; *Matter of Gellis*, 141 Misc. 432, 440, 441.)

The legislation here in question was enacted as a result of the report and recommendation of the Commission appointed by the Governor, pursuant to chapter 519 of the Laws of 1927, " to investigate and recommend as to the advisability of a revision of the real property law, the personal property law, the decedent estate law and the other statutes of this state as the commission may deem advisable for the purpose of modernizing and simplifying the law relating to estates and the systems of descent and distribution of property, the advisability of establishing a unified system for the devolution of real and personal property, and to prepare proposed legislation for such purposes." The Commission so appointed consisted of four surrogates, four senators, four assemblymen and three members of the bar. The reports of the Commission are embodied in Legislative Documents No. 62 of 1929; No. 69 of 1930, and No. 69 of 1931, and are properly to be considered by the court in a construction of the statutes enacted in pursuance of their recommendations. (*American Historical Society* v. *Glenn*, 248 N. Y. 445, 451, 452; *People* v. *Schweinler Press*, 214 id. 395, 404; *Matter of Byrnes*, FOLEY, S., 141 Misc. 346; *Matter of Gellis*, Id. 432, 440, 441.)

The first report of the Commission (N. Y. Leg. Doc. vol. 19, No. 70) contains the following observations, beginning at page 12: " There is a glaring inconsistency in our law which compels a man to support his wife during his lifetime and permits him to leave her practically penniless at his death. The only limitation to this right is contained in section 17, Decedent Estate Law, which prohibits the testator from bequeathing more than one-half of his estate to charitable corporations or purposes in case the decedent leaves husband or wife, child or parent. But the inconsistency of the statute is that the alleged principle of public policy does not protect those whom it is designed to protect. A man leaving a wife or children or parent may give one-half of his estate to charity, and the other half to a stranger, entirely ignoring those dependent upon him. The unlimited power conferred upon the maker of a will by our New York law of liberty of bequest is absolutely at variance with the legal liability of an unnatural father or a neglectful husband in his lifetime. Under our humanitarian laws, he may be compelled during his life by criminal proceedings or civil process to contribute to the support of a wife or minor children. Death frees his property from this liability and he may do with it what he pleases by a valid will. The average testator is just in his testamentary gifts to his dependents, but examples of injustice often occur.

"* * * The Commission advocates the adoption of a statute similar to that enacted by Pennsylvania in 1917. In line with

the progressive policy of modern legislation, and in place of dower, the Commission recommends that there be substituted the right of the widow to take her intestate share against the provisions of the will. Thus disinheritance or unfair discrimination will be avoided. We do not propose to go as far as Pennsylvania did, because that Commonwealth permits the surviving spouse to elect to take the entire intestate share outright as against the terms of the will. It does not seem to the Commission to be desirable that the right to take the intestate share should be given to the surviving spouse in every estate, regardless of its amount. But while immediate necessities should be provided for, there should be some limitation by way of permitting the income only upon the balance of the intestate share to be paid over during the life of the surviving spouse. Therefore, in the larger estates the Commission proposes to preserve to the testator a right to create a trust, with income payable to the wife, upon a principal equal to or greater than her intestate share. In such cases, the widow will not be permitted to defeat her adequate testamentary benefits by any right of election."

Pursuant to this recommendation, various changes in the law were enacted, the most important of which, for present purposes, were section 18 of the Decedent Estate Law and sections 189 and 190 of the Real Property Law. The proposed legislation in regard to the first named is found on pages 34 and 35 of the Legislative Document (1929) No. 62, and, as far as is presently material, is the precise statute now before the court for construction. To this legislative proposal is appended a note (p. 6) reading in part as follows: " The section [18] as proposed gives an increased right to the surviving wife or husband in lieu of the existing rights of dower and curtesy. The reasons for this enactment, and its general purposes, are contained in the original report of the Commission to Investigate Defects in the Laws of Estates, at pages 12 and 13.

" The right of election has been limited to estates where the testator dies after August 31st, 1930, and leaves a will executed after that date. It does not apply to wills executed on or before that date.

" The words ' in lieu of any right of dower ' are intended to refer to an inchoate right existing in lands acquired by the husband prior to September 1, 1930."

In consonance with the general plan, sections 189 and 190 of the Real Property Law were amended (Legislative Document [1928], No. 70, p. 54), the new enactments, with the explanatory notes submitted to the Legislature, reading as follows:

" § 189. Estate of curtesy abolished. The common law estate

by the curtesy in the real property of a wife dying after the thirty-first day of August, nineteen hundred and twenty-nine, and all its incidents, are hereby abolished.

" (Note. New. The intestate share of the husband in the wife's realty is intended to be substituted for his present estate by the curtesy.) * * *

" § 190. Dower. A widow shall be endowed of the third part of all the lands whereof her husband was prior to the first day of September, nineteen hundred and twenty-nine, seized of an estate of inheritance, at any time during the marriage. After the thirty-first day of August, nineteen hundred and twenty-nine, no inchoate right of dower shall be possessed by the wife during coverture, and no widow shall be endowed, in any lands whereof her husband became seized of an estate of inheritance subsequent to said day.

" (Note. Last sentence new. After September 1, 1929, the former right of dower will be merged into the absolute share in fee which the widow will take under the proposed amendments to new section 83 of the Decedent Estate Law, subject to a right of election given in new section 82.

" The reasons for the abolishing of dower are set forth in the general report of the Commission to Investigate Defects in the Laws of Estates at page 9.

" The widow's dower right as now existing furnishes no adequate protection to her and often seriously complicates the sale of real property. In the cities it has been to a great extent entirely defeated by the present widespread system of taking title to real estate, even including homes, in the name of a corporation. In rural communities the widow's dower interest furnishes scant benefit to her. The average person believes that it gives to the widow one-third of her husband's realty outright, whereas the law only gives to her one-third of its income.

" It is intended that inchoate dower rights existing prior to September 1, 1929, shall remain if a widow desires to assert them instead of the share in fee given her under new section 83 of the Decedent Estate Law, for that reason sections 191-207 of the Real Property Law, and the other sections in that law and in the Civil Practice Act, relating to dower, are to be continued in effect.) "

This review renders it entirely obvious that the legislation here under consideration was enacted to remedy a pressing evil which had been called to the attention of the Legislature by the Commission appointed for that purpose.

It is well settled that remedial statutes are to be construed

with great liberality for the purpose of effecting the reforms envisaged. This principle is noted by Blackstone (Vol. 1, p. 87) whose statements in this regard are quoted and applied in *American Historical Society* v. *Glenn* (248 N. Y. 445, at p. 451) as follows: " ' There are three points to be considered in the construction of all remedial statutes; the old law, the mischief, and the remedy: that is, how the common law stood at the making of the act; what the mischief was, for which the common law did not provide; and what remedy the parliament hath provided to cure this mischief. And it is the business of the judges so to construe the act as to suppress the mischief and advance the remedy.' "

*Archer* v. *Equitable Life Assurance Soc.* (218 N. Y. 18) contributes the following (at p. 25): " The section is remedial. It modifies rules of the common law. The law is, that in determining whether or not a statute abrogates or modifies a rule of the common law, the construction of the statute must be strict; when, however, a remedial statute does replace in whole or in part common-law rules, it must be given an application, liberal and, within its language, commensurate with its purpose."

Applying these principles, it is first to be noted that dower, which is the right abolished, has ever been most favored in the law. (*Matter of Gorden*, 172 N. Y. 25, 28; *Konvalinka* v. *Schlegel*, 104 id. 125, 129; *Matter of Fairchild*, 138 Misc. 363, 365.)

This is noted with special clearness in the opinion of the Supreme Court of Michigan in *May* v. *Rumney* (1 Mich. 1, at p. 5), which paraphrases and adopts the language of Chancellor KENT (4 Kent Com. 36) as follows: " So highly  *  *  *  was the law of dower esteemed, and so anxious were our forefathers to secure its undisputed establishment, that in its modern sense and enlarged extent, as applying to all lands of which the husband was seized during the coverture, it was incorporated amongst the provisions of Magna Charta, and it has continued in the English law to the present time; and with some modifications it has been everywhere adopted as part of the municipal jurisprudence of the United States."

*Wachstetter* v. *Johnson* (61 Ind. App. 659, 668) quotes and applies the language of Lord COKE on the subject, as follows: " The liberality with which dower was looked upon under the common law, is best expressed by the quaint and terse language of Lord COKE, ' There are three things highly favored in the law, life, liberty and dower.' "

With this background, it becomes obvious that the Legislature, in the remedial statutes thus enacted, intended a greater benefit to the widow than that which she had previously enjoyed, and not a lesser. Were the contentions of the respondents to be sustained, however, it might happen in many cases that the widow would be

deprived of all rights whatsoever. As has been noted, the amendment of section 190 of the Real Property Law (Laws of 1929, chap. 229), while continuing dower in respect to lands owned by a testator prior to September 1, 1930, expressly abolished it as to all lands acquired after that date. If, therefore, it were to be determined, as contended by respondents, that section 18 of the Decedent Estate Law does not apply to a case where a man had made a will prior to the effective date, and a codicil thereafter, it would follow that if such a testator acquired lands after September 1, 1930, he would have a greater power to work injustice to his widow in respect thereto than he had previous to the enactment of the new legislation, since with her dower right therein abolished, the power of unrestricted conveyance would still remain. Such a construction, operating to the disadvantage of the very person for whose benefit the remedial legislation was enacted, would not be adopted save where no escape from such a course was possible; *a fortiori*, not in a case like the present, where the natural, if not the inevitable connotation of the language employed is obviously to the contrary.

That statutes substituting other rights for dower are entitled to most liberal construction in favor of the widow is indicated by the decisions of other States where similar questions have been adjudicated.

The opinion in *Wachstetter* v. *Johnson* (61 Ind. App. 659) reads in part as follows (at p. 668): " As a preface to our views upon this proposition, it has been held that the statutory enactment in lieu of or as a substitute for dower has been liberally construed in favor of the widow; it has been treated by the courts as analogous to dower, and has received, in a measure, the same construction."

In *Freeman* v. *Ramsey* (189 N. C. 790) the court says (at p. 795): " Dower has always been a favorite of the law. No mode of ascertaining and setting apart the substitute for dower as contemplated by C. S. 4098, is provided by statute, and none is expressly provided in the instant will, but such a beneficent provision for his widow cannot fail for want of a remedy."

*Hinds* v. *Pugh* (48 Miss. 268) contributes the following (at p. 275): " Dower, being intended for the sustenance of the wife and the nurture and education of the younger children, is much favored by the law. And it has been held that our statute, authorizing a conveyance by the husband to operate as a ˙bar of the widow's dower, being in derogation of her common law right, should receive such construction as will fully protect her rights within the limitation to the husband's power of alienation specified in it." (See, also, *Jiggitts* v. *Jiggitts*, 40 Miss. 725; *Harley* v. *Harley*, 140 Wis. 282, 289; *Mayo* v. *Arkansas˙ Valley Trust Co.*, 132 Ark. 64, 69.)

As is stated in *Matter of Bergdorf* (206 N. Y. 309, at p. 316): " The right to make a testamentary disposition of property is not an inherent right; nor is it a right guaranteed by the fundamental law. Its exercise to any extent depends entirely upon the consent of the legislature as expressed in their enactments. It can withhold or grant the right, and if it grants it, it may make its exercise and its extent subject to such regulations and requirements as it pleases."

The effect of the enactment here under construction is to give a conditional right of testamentary disposition. In effect, it is that in the absence of a valid consent to the contrary by his spouse, a person leaving a surviving spouse may, subsequent to August 31, 1930, make testamentary directions respecting his temporal affairs only to the extent of the property of which he dies seized and possessed, which would not pass to the surviving spouse if he died intestate, unless his composite disposition of his property complies with the conception of the Legislature as to what is an adequate provision for such spouse, depending on his financial standing. The only extension to this power of testamentary disposition is found in the cases in which the law determines that the surviving spouse is unworthy of the protection accorded. These instances are specifically enumerated in subdivisions 2 to 5, inclusive, of the section and need not be presently considered as the widow in the case at bar is not within their description. Any person exercising the right of testamentary direction subsequent to August 31, 1930, is conclusively presumed to accept the condition imposed by the Legislature. The statute is to be construed liberally in favor of the surviving spouse, and in this connection the intent or desire of the testator respecting its application is of no more relevancy than in a case of excess gifts to charity under section 17 of the Decedent Estate Law, or of undue restraint on alienation under section 42 of the Real Property Law (as amd. by Laws of 1929, chap. 229).

It is, therefore, determined in the case at bar that the petitioner, Lena Greenberg, is entitled, under the provisions of section 18 of the Decedent Estate Law, to elect to take her share of the estate of Ancil Greenberg as in intestacy.

Proceed accordingly.