S. Samuel Di Falco, S.
The following rulings are made on the questions presented by the petition:
(1) The legacy to Baron de Hirsch Orphanage in Brussels, Belgium is directed to be paid to Consistoire Israelite, the corporate body of which the orphanage is a branch or part. (Kernochan v. Farmers' Loan & Trust Co., 187 App. Div. 668, affd. 227 N. Y. 658.)
(2) The discretion granted in article twelfth of the will in respect of payment of $2,500 annually, relates only to the times of payment. The will very plainly states: “ my trustees are also directed to pay out of the principal of said trust in each year the sum of Two Thousand Five Hundred ($2,500.00) Dollars ”. (Emphasis added.) This command of the testatrix leaves no room for independent decision by the trustees. Discretion is, however, granted in the text immediately following: “ and to pay the said sum of Two Thousand Five Hundred ($2,500.00) Dollars out of said principal to such beneficiaries in such amounts as they in their sole discretion may determine, but only at the same time that they shall pay the installments of income to said beneficiaries ”. The will expressly bestows *782 upon the trustees discretion as to the installments in which the income is to be paid to the beneficiaries and as to the intervals between the installments. The will, therefore, means that the trustees must pay $2,500 each year to the beneficiary, but may pay it in one lump sum or in such installments as they choose.
The death of the sister of the testatrix eliminates any question as to the persons to whom the annual payments of principal are to be made.
(3) The nineteenth article of the will directs that if any country in which any trust beneficiary is a resident shall pass any law which will tax or confiscate or expropriate more than 40% of the income or principal which shall be payable to him or her under the terms of “ the trust mentioned herein ”, the trustees shall suspend payment of income and principal to the beneficiary who would be affected by that law and shall pay the income to a named charity during the period of time such law is in effect. Some of the trust beneficiaries reside in France, and some, in Turkey. The trustees in their petition profess ignorance of the foreign tax laws and express doubt as to the proper manner of administering the trusts. However, they have in this proceeding submitted written opinions by experts in the foreign laws. The trustees ask the court to advise them in respect of the operation of article nineteenth of the will.
The opinion of the expert on Turkish law states that no income or principal will be taxed at 40% or higher and the data submitted by him indicates that the highest income tax figures are below 40%. Under the present law of Turkey, no trust beneficiary would be taxed beyond the maximum rate specified in the will.
The expert on French tax laws was not given sufficient data to enable him to state definitively the income tax liabilities of the French residents. His written opinion sets forth at length the operation of the income tax laws in the various circumstances assumed by him. In the absence of categorical statements relating to each trust beneficiary, the court cannot say that under present circumstances no beneficiary would be taxed beyond the stated percentage. The trustees must determine the incidence of the laws in the actual circumstances of each particular case and must decide whether or not the 40% maximum is exceeded.
The nineteenth article also provides an alternative bequest in the event that any legacy is taxed at a rate in excess of 50%. The expert evidence establishes that there will be no inheritance tax against the French or Belgian legatees and that the Turkish *783 inheritance tax will be well below the stated figure. The outright legacies that are now due and payable may, therefore, be paid to the respective legatees.
(4) Only one trust was created by the first of the testamentary instruments. Two other trusts were provided by codicil. Petitioners ask whether the nineteenth article of the will relates to the trusts created by the codicil. The general rule is that a will and a codicil shall be taken and construed together as parts of one and the same instrument, and that the intention of the testator is to be ascertained by a consideration of the composite whole. (Hard v. Ashley, 117 N. Y. 606, 613.) It is a rule of construction also that where the will imposes conditions on the gifts made therein, a gift made by codicil is generally presumed to be subject to the same conditions (2 Page, Wills, § 922, p. 834; Matter of Case, 65 N. Y. S. 2d 580, 585; Willoughby v. Willoughby, 66 R. I. 430), unless, of course, the terms of the will or codicil reveal a different intent and purpose. In the pending proceeding, no one has any doubt that certain general provisions of the will apply to the trusts created by the codicil. The provision governing appointment of trustees and those specifying the trustees’ powers and authority are assumed to be equally applicable to all trusts. The principal basis for questioning the applicability of article nineteenth is that the first paragraph of that article uses the words “ the trust mentioned herein”. It is thus argued that article nineteenth is restricted in its operation to the single trust created by the will. The word “trust” was appropriate when used in the will because only one trust was created originally. At the time that the testatrix drew her will she obviously did not have in mind any idea of creating trusts other than the one then provided for. The use of the word “ trust ” in the will does not, therefore, give us much assistance in ascertaining her intention with respect to the later gifts. On the other hand, the method which the testatrix used in setting up the gifts in her codicil is significant. She did not simply add the legacies to those already given by will. Instead, she specifically amended article tenth of the will hy inserting the new provisions as separate subdivisions of that article. Thus the trust provisions for her grandniece are set forth in article fourth of the codicil in the following introductory text: “ I hereby add an Article to said will to be designated as ‘ Article tenth (C) ’ by making the following additional bequest ’ ’. Thus the legacy falls in place just as if it were contained in article tenth of the original will. The trust for her grandnephews in like manner is inserted *784 in the will as article tenth (D). The codicil ratifies and confirms the will in all respects other than as provided in the codicil.
All of the primary beneficiaries of the trusts created by the codicil reside outside the United States. All of them are descendants of the primary beneficiaries of the residuary estate. The primary beneficiary of the article tenth (C) trust is, in turn, a contingent remainderman of the residuary trust, and as such is plainly subject to article nineteenth. The provisions of article nineteenth of the will are unusual and would not easily have been forgotten or overlooked by the testatrix. Under all of these circumstances, it is clear that article nineteenth of the will is generally applicable to the gifts bequeathed in the codicil.
In holding that article nineteenth is generally applicable, it does not necessarily follow that the alternative disposition of income in article nineteenth is operative - each year. Article nineteenth refers to a tax of more than 40% “of the income or principal which shall be paid to any of said persons under the trust mentioned herein”. In the article tenth (C) trust, the income is directed to be accumulated for the benefit of the infant until she attains the age of 21 years, or shall marry. No income is to be paid to her until that time. Hence article nineteenth by its own terms can have no operative effect upon this trust fund until assets become payable to her.
In the trust created by article tenth (D) of the will, the trustees are given broad discretion to apply the income, to pay it to the beneficiaries, or to divide it between them as the trustees shall determine. Precatory suggestions are made in respect of the uses and purposes to which the funds are to be put. The fact that one beneficiary might be taxed above 40% would not prevent the trustees from applying all of the income to the use of the other who might not be so taxed. Article tenth (D), however, does not authorize the accumulation of income during minority. On the contary, it directs payment or application of the income “ at least annually”. In the event that neither beneficiary can qualify under article ninteenth, the temporary alternative disposition of income will become operative.
(5) The trustees ask whether the first paragraph of article nineteenth (40% limitation) or the second paragraph (50% limitation) applies to gifts of principal of the trust funds. Inasmuch as the record shows that at the present time none of the beneficiaries would be subject to any inheritance tax in either amount, the question is presently academic and does not now require answer.
*785 (6) The imposition upon the legacies of the condition stated in article nineteenth, namely, that they should be suspended or lapse unless the legatees should have the benefit of the greater part of the gifts, is not against public policy. The provision in the first paragraph of article nineteenth for alternative disposition of income during the respective trust terms does not violate the terms of section 11 of the Personal Property Lav?'. That paragraph does not in any v?ay suspend the absolute ownership of property. Such suspensions as occur in the respective trusts result from the terms of the trusts themselves and are within the permissible statutory limits. Nor does the second paragraph of article nineteenth violate section 11 of the Personal Property Law. Unlike the cases cited by counsel, this paragraph does not direct any delay whatever in the payment of outright legacies. It assumes that the executors must first administer the assets and that some delay will occur by operation of law, and it provides for possible alternative dispositions depending upon facts and circumstances existing at the time when the executors are able and ready to pay the legacies. In that respect the will is similar to those which provide alternative dispositions in the event of death of the primary legatee before distribution. Such provisions have consistently been upheld. (Matter of Herrmann, 193 Misc. 466, 471; Matter of Powers, 98 N. Y. S. 2d 457, affd. 278 App. Div. 638; “ Gifts Over On Death Before Distribution Under the New York Rule Against Perpetuities”, 50 Col. L. Rev. 225.) Inasmuch as it appears in this record that none of the conditions which would have defeated any of the outright legacies has come to pass, the question of the time when legacies vest indefeasibly is only of academic interest and need not be determined.
(7) Article tenth (C) of the will, as added by the fourth article of the codicil, explicitly provides for payment of income if the beneficiary shall marry before reaching the age of 21 and for payment of principal if she shall marry between the ages of 21 and 25, when the trust is to terminate in any event. If she marries before age 21, accumulation of income shall cease and all accumulated income is to be paid immediately to her. Thereafter, income shall be paid to her until she reaches the age of 25 “or if she shall marry between the ages of 21 years and 25 years ”, then upon her marriage the entire principal and “ accumulated income ’ ’ are to be paid to her. The beneficiary is now 19 years old and plans to marry before attaining the age of 21.
"While the will does not in explicit terms direct payment of principal upon attaining the age of 21 if the beneficiary is then married, the intention that she shall then receive the money is *786 fairly to be implied. Tbe expression of tbe plan is artless. Nonetheless it clearly reveals the intention to put her in possession of the principal upon her marriage but not before she reaches the age of 21, and to terminate the trust when she attains the age of 25 if she is not then married. The trustees shall, therefore, pay her the principal of her trust at age 21 if she is at that time married.
(8) Article tenth (D) of the will, as added by the fifth article of the codicil authorizes the trustees, in their discretion, to invade principal each year to the extent of $1,500. The stated figure refers to principal only and not to principal and income combined.
(9) The petition expresses the uncertainty of the fiduciaries as to the manner of administering the trusts pursuant to article nineteenth. In the course of this proceeding an agreement by the alternative charitable beneficiary has been placed in the record. It provides for the manner of proving to the satisfaction of the charity and the fiduciaries whether or not foreign laws may at any time make the alternative provisions operative. In their brief the petitioners ask instructions in this respect. The court is not required to approve or disapprove the agreement between the parties. It purports to bind the signatory thereto. The court cannot give instructions to the trustees as to the steps to be taken reasonably to satisfy themselves as to compliance with the will. They will be required to use judgment and prudence in the light of circumstances as they exist from time to time. Certainly prudence would not require procurement of opinions by experts before each and every quarterly payment of income. The fiduciaries, particularly the corporate fiduciary, will undoubtedly be able to administer the trust within the terms of the will 'without the complications suggested in the recitals to the agreement.
The compensation of the attorney executor is fixed in the sum requested.
The court will take proof of the personal claims of the executors on the 6th day of March, 1959 at 11:30 a.m.